# EXHIBIT 60

## AFFIDAVIT OF D. SCOTT WHITEHURST

STATE OF ALABAMA    )
COUNTY OF BALDWIN    )

      Before me, the undersigned authority personally appeared D. SCOTT WHITEHURST who, after being by me first duly sworn, under oath, doth depose or say as follows:

1. My name is D. Scott Whitehurst. I reside in Baldwin County, am above the age of 19, and suffer no incapacities. I am personally familiar with the facts stated in this affidavit. I serve as Region Vice President of D.R. Horton, Inc. – Birmingham, ("DRH-Birmingham"), a homebuilder doing business in Alabama. In my capacity as Region Vice President of DRH-Birmingham, I have personal knowledge that DRH-Birmingham has engaged the services of numerous subcontractors, material suppliers and vendors, engineers, surveyors, designers, and inspectors who are from, located in, or based in states other than Alabama. Many of these out of state people and companies often provided labor, materials, professional services, or inspection services for DRH-Birmingham homes constructed and sold throughout Baldwin County, Alabama.

2. DRH-Birmingham is named as a defendant in the Complaint filed by Ricky Ramey (the "Plaintiff"), entitled *Penny McAnally, et al. v. D.R. Horton, Inc.-Birmingham, et al.*, filed in the Circuit Court of Baldwin County, Alabama, Case Number CV-2022-900069.

3. DRH-Birmingham entered into a Home Purchase Agreement with Plaintiff Ricky Ramey for the purchase of a home located at 15646 Troon Drive, Foley, AL 36535 (the "Home"). The Plaintiff executed the Home Purchase Agreement on or about May 28, 2018.

4. The Home Purchase Agreement contains an arbitration provision and a warranty provision. The Home Purchase Agreement containing the arbitration and warranty provisions is attached as Exhibit A. The Plaintiff also executed the Warranty document attached as Exhibit B.

5. On or around January 21, 2022, the Plaintiff filed a Complaint in the Circuit Court of Baldwin County, Alabama, alleging certain construction defects in his home, including but not limited to, alleged defects relating to windows, roof bracing, various fasteners and foundation elements. Counts asserted against D.R. Horton, Inc., and D.R. Horton, Inc. – Birmingham included claims for alleged violations of the Alabama Deceptive Trade Practices Act, injunction, fraud, negligence, wantonness, negligent hiring, training and supervision, and nuisance. The Plaintiff's Complaint does not contain any counts against D.R. Horton, Inc., or D.R. Horton, Inc. – Birmingham alleging breach of warranty.

6. The Plaintiff financed the purchase of the Home with DHI Mortgage Company, Ltd., a Texas Limited Partnership. The Plaintiff obtained title insurance on the Home at closing through a title policy issued by DHI Title of Alabama, Inc. The survey was performed by Butler & Associates of Pensacola Inc., based in Pensacola, Florida.

1

7. Upon purchasing the home, the Plaintiff was provided a home warranty administered by Residential Warranty Company, LLC, based in Harrisburg, Pennsylvania.

8. The Plaintiff's home, the subject of the Home Purchase Agreement, was constructed with materials, equipment, machinery, and supplies from individuals, companies, suppliers and vendors located in states other than Alabama, including Florida, Georgia, Mississippi, Ohio, Tennessee, Texas, and Wisconsin. The Plaintiff's home was designated as a Gold Fortified home by the Insurance Institute for Business & Home Safety, headquartered in Tampa, Florida. The subcontractor that poured the concrete slab is based in Foley, Alabama. The soil tests were performed by an engineer in Milton, Florida. The window package was provided by a supplier from Pensacola, Florida. The truss drawings for the home were produced by a Florida company. Roofing materials were provided by a supplier from Wisconsin. Roofing and framing labor were provided by a subcontractor from Pensacola, Florida. Certain building materials used for the construction of the Plaintiff's home were manufactured in states other than Alabama then were transported to Alabama for construction, including trusses manufactured in Florida.

Further the affiant sayeth not.

D.R. HORTON, INC. - BIRMINGHAM

By: _____
D. Scott Whitehurst
As Its: Region Vice President

STATE OF ALABAMA )
COUNTY OF BALDWIN )

I, Leigh Ann Capocci, a Notary Public in and for said State and County, hereby certify that D. Scott Whitehurst, whose name as Region Vice President of D.R. Horton, Inc.-Birmingham, is signed to the foregoing document, and who is known to me, acknowledged before me on this day that, being informed of the contents of same, he, as such officer and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand this 4th day of April 2022.

_____
Notary Public
My Commission Expires: 7/21/23

(SEAL)

NOTARY PUBLIC
Leigh-Ann Capocci
County of Baldwin
ALABAMA STATE AT LARGE

2

# EXHIBIT A

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643



## HOME PURCHASE AGREEMENT

In consideration of the reciprocal covenants stated herein, **DR Horton, Inc. - Birmingham**, ("Seller") and **Ricky W. Ramey and Ronnie Lane Ramey** (collectively, "Purchaser") agree as follows:

**1. CONVEYANCE.** Seller shall sell to Purchaser and Purchaser shall purchase from Seller all that certain parcel or tract of land with a street address of **15646 TROON DRIVE, FOLEY, AL 36535**, more particularly described as Lot **0079**, **Woodmont** Subdivision (the "Lot") in **BALDWIN, AL**, together with all improvements thereon and all appurtenances thereto, but less and except all rights, titles and interests to all oil, gas, water, petroleum, natural gas, coal, lignite and other minerals and hydrocarbons, and all geothermal energy and resources, located in whole or in part on, in or under the Lot and / or that may be produced or extracted from the Lot. The interests to be conveyed pursuant to this Home Purchase Agreement (the "Agreement") are hereinafter collectively referred to as the "Property."

**2. PURCHASE PRICE AND METHOD OF PAYMENT.** Subject to adjustment as may be provided herein, the Purchase Price for the Property shall be: **Two Hundred Fourteen Thousand Nine Hundred and 00/100 Dollars ($214,900.00)** to be paid in cash as provided herein. The following is a breakdown of the Purchase Price as of the Effective Date (defined in Section 19 below):

| | |
|---|---|
| Base Price | **$209,900.00** |
| Plus Lot Premium | + $ 0.00 |
| Plus Options Selected To Date | + Total DEC Options: **$10,425.00** |
| | + Total POS Options: $ 0.00 |
| Incentives | - $ 0.00 |
| Total Purchase Price | **$214,900.00** |

The terms of the subsection (a or b) checked below shall also apply.

**⭕ a. No Financing Contingency.**

      Purchaser shall pay to Seller the Purchase Price in cash at Closing (see Section 16 below). Within ten (10) business days after the Effective Date, Purchaser shall provide documentation to Seller that will verify to Seller's reasonable satisfaction that Purchaser has the available funds necessary to purchase the Property according to the terms of this Agreement. If Purchaser does not provide such documentation to Seller within that time period, then Seller may at its option terminate this Agreement by providing written notice to Purchaser of termination, in which event Seller shall retain the Earnest Money (see Section 4(b) below) and neither party shall have any further obligation or liability to the other hereunder.

**⊗ b. Financing Contingency**

      (1) Purchaser shall use its best efforts to obtain a loan in the principal amount of no more than **80** percent of the Purchase Price, reduced to the next lowest hundred dollars, (the "Loan") to be secured by a first priority mortgage on the Property. The proceeds of the Loan, together with the balance of the Purchase Price, shall be paid to Seller by Purchaser in cash or other immediately available funds at Closing.

      (2) Purchaser shall apply for the Loan within <u>seven (7)</u> days after the Effective Date. Failure by Purchaser to apply for the Loan within that time-period or to pursue approval of the Loan diligently thereafter shall constitute a material breach of this Agreement by Purchaser. Within <u>twenty-one (21)</u> days after the Effective Date, Purchaser shall provide Seller with a letter from Purchaser's lender (the "Approval Letter") confirming that the Loan has been approved. If Purchaser fails to provide the Approval Letter to Seller within that period, then Seller may terminate this Agreement upon written notice to Purchaser, in which event the Earnest Money shall be refunded to Purchaser if Purchaser is not in breach of this Agreement, and thereafter neither party shall have any further liability or obligation to the other hereunder.

      (3) Purchaser acknowledges that there are many different loan programs available from many different lenders. If the loan approval obtained by Purchaser contains any contingencies, Seller may require the satisfaction of those contingencies within the time period specified for obtaining the Approval Letter and terminate this Agreement if those contingencies are not waived or satisfied within that time; in which event, the Earnest Money shall be refunded to Purchaser, and neither party shall thereafter have any further liability or obligation to the other hereunder.

      (4) Purchaser understands and acknowledges that certain loan/credit approvals are only valid for up to one hundred twenty (120) days. Purchaser shall update loan/credit approval documentation as needed in order to maintain current loan approval up until the date of closing. Purchaser agrees to execute all papers and perform all other actions necessary to obtain the Loan and to accept the Loan if approved by lender. Purchaser shall, in addition to the payment of principal and interest upon the Loan, pay at Closing such amounts as may be required by the lender to establish or maintain an escrow for insurance, property taxes or private mortgage insurance.

      (5) If Purchaser applies for and obtains a commitment for an FHA-insured or VA-guaranteed loan, then notwithstanding any other provision of this Agreement, Purchaser shall not be obligated to complete the purchase of the Property or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs or a Direct Endorsement lender setting forth the appraised value of the property of not less than **$214,900.00**. The Purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development ("HUD") will insure. HUD does not warrant the value or the condition of the property. Purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

**3. FINANCIAL INFORMATION.** Purchaser acknowledges that Purchaser's financial situation may affect Purchaser's ability to obtain a loan and/or purchase this Property. Purchaser further acknowledges that it is important for the Seller to know Purchaser's financial situation and Purchaser's ability to obtain financing. Purchaser hereby grants permission for the Seller to contact any mortgage company or financial institution to which Purchaser may apply for a loan and to discuss Purchaser's financial situation and

prospects of obtaining a loan.   Purchaser hereby authorizes any mortgage company or financial institution from which Purchaser may seek a loan to discuss Purchaser's financial status with the Seller and to provide the Seller with any documentation or information regarding said financial status, including but not limited to Purchaser's credit score.

## 4. EARNEST MONEY.

**a.   Deposits**.   The parties acknowledge that Purchaser has paid to Seller a deposit in the amount of **$1,000.00** (the "Initial Deposit"). The Initial Deposit and any additional deposits of earnest money paid by Purchaser to Seller (collectively, the "Earnest Money") shall be deposited with Seller in its trust account upon acceptance of this Agreement by Seller. Deposits of Earnest Money shall be made by Purchaser in accordance with the following schedule:

| Earnest Deposits | | | | | |
|---|---|---|---|---|---|
| Due Date | Collection Date | Payment Type | Check Number | Deposit Amount | Collection Amount |
| 05/26/2018 | | | | $1,000.00 | $1,000.00 |
| | 05/26/2018 | Check | 1001 | | $1,000.00 |
| | | | **Total** | **$1,000.00** | **$1,000.00** |

**b.   Disbursement**.   The Earnest Money shall be retained by Seller except as otherwise expressly stated in this Agreement. At Closing, the Earnest Money shall be credited to Purchaser against the Purchase Price; otherwise, the Earnest Money shall be disbursed as provided herein. If any dispute arises between Purchaser and Seller as to the final disposition of all or part of the Earnest Money, Seller may, but shall not be required to, interplead all or any disputed part of the Earnest Money into a court of competent jurisdiction. If Seller interpleads the Earnest Money in a court, Seller shall be entitled to recover the costs of such interpleader, including reasonable attorney's fees incurred in connection with the interpleader, from the Earnest Money.

## 5. SURVEY.
At Closing, Seller shall provide Purchaser with a plat of survey of the Lot performed by an independent, licensed surveyor or engineer, showing all improvements located thereon as of the date of the survey (the "Survey"). The Survey shall be suitable for use by Purchaser to obtain title insurance for the Property without the standard exception for matters that would be shown or revealed by a current survey of the Lot. Seller makes no warranty or representation whatsoever regarding the quality, accuracy or reliability of the Survey. Seller makes no warranty or representation whatsoever regarding any matter that would be shown or revealed by an accurate survey of the Lot.

## 6. WARRANTY OF TITLE.
Seller shall convey insurable fee simple title in and to the Property to Purchaser at Closing by statutory warranty deed (the "Deed"), subject to: (a) zoning ordinances affecting the Property; (b) utility, drainage and other easements, deed restrictions or other conditions or restrictions of record upon which do not prevent use or enjoyment of the Lot or the House constructed thereon; (c) subdivision covenants, conditions and restrictions; (d) all matters shown on the final plat for the subdivision where the Property is located; (e) all prior conveyances and/or reservations of all rights, titles and interests to all oil, gas, water, petroleum, natural gas, coal, lignite and other minerals and hydrocarbons, and all geothermal energy and resources, located in whole or in part on, in or under the Lot and/or that may be produced or extracted from the Lot; and (f) any matters that would be shown or revealed by a current survey of the Lot. "Insurable title" shall mean title which a title insurance company licensed to do business in Alabama will insure at its regular rates, subject only to its standard exceptions and those exceptions listed in subsections (a) through (f) above.

## 7. TITLE EXAMINATION.
Purchaser shall have until ten (10) days prior to the Closing Date (as defined in Section 16 below) to examine title to the Property and to furnish Seller with a written statement of any exceptions to insurable title. If Purchaser does not serve Seller with notice of exception to insurable title prior to that date, Purchaser shall have waived any objection to title to the Property as it existed as of the Effective Date. If Purchaser does serve such notice on Seller prior to that date, the notice shall specify and itemize the exceptions to insurable title. If Seller does not remove any exceptions to insurable title within a reasonable time, Purchaser shall have the right to terminate this Agreement and to receive a refund of the Earnest Money and Option Money (as defined in Exhibit A), if any, paid to Seller. Under no circumstances shall Seller be obligated or required to remove or cure any exception to title to the Property that is a permissible exception to insurable title as defined in Section 6 above.

## 8. DESTRUCTION.
If the home built on the Lot is either totally destroyed or substantially damaged (as determined by Seller in its sole discretion) before Closing, either party may terminate this Agreement by written notice to the other within ten (10) days after the date of such destruction. From and after the Closing (see Section 16 below), all risk of loss to the Property shall be upon Purchaser.

## 9. INSPECTION.

**a.   Procedure**.   Prior to Closing, Seller shall have the right to deny access to the Lot to any person at any time, as Seller determines in its sole discretion. However, Purchaser or a professional home inspector contracted by Purchaser shall have the right to enter upon the Property at reasonable times during normal business hours for the purpose of inspecting, examining, testing and surveying the Property, solely at Purchaser's expense, provided that any such inspection must meet the following requirements and conditions (collectively, "Inspections"):

(1)   Inspections by Purchaser:

(a)   All Inspections by Purchaser must be scheduled through the Community Construction Superintendent.   These Inspections must be scheduled at least ten (10) business days in advance, must take place during normal working hours (Mon. – Fri. 8:00AM to 4:00PM) and must be in accordance with the Community Construction Superintendent's production schedule.

(b)   Seller or its appointed representative shall have the right to accompany Purchaser during the Inspections.

(2)   Inspections by an independent professional home inspector:

(a)   All Inspections by a professional home inspector must be scheduled through the Community Construction Superintendent.   These Inspections must be scheduled at least ten (10) business days in advance, must take place during normal working hours (Mon. – Fri. 8:00AM to 4:00PM) and must be in accordance with the Community Construction Superintendent's production

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643    ress: 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock    **Job: 224650079**

**Printed:** 5/26/2018

schedule. IF AN INSPECTOR DOES NOT HAVE AN APPOINTMENT ONE WEEK PRIOR TO THE PROPOSED INSPECTION, THE INSPECTOR WILL NOT BE ALLOWED TO PERFORM THE INSPECTION AND WILL BE INSTRUCTED TO RESCHEDULE. SELLER WILL NOT DELAY CONSTRUCTION OR CLOSING TO ACCOMMODATE INSPECTION APPOINTMENTS.

        (b)    Seller or its appointed representative shall have the right to accompany the home inspector during the Inspection.

        (c)    The home inspector must be licensed to do business in the State of Alabama and must furnish to Seller a copy of the inspector's State License Certificate prior to conducting any Inspections.

        (d)    Prior to each Inspection, the home inspector must furnish Seller with proof that the home inspector has: (i) worker's compensation insurance in accordance with applicable law, (ii) an errors and omissions insurance policy with a limit of no less than $300,000 and otherwise in accordance with applicable law and the guidelines of the Limited Warranty provided pursuant to Section 14(a) below, and (iii) a $300,000.00 General Liability Insurance Policy which names Seller as an additional insured.

**Failure by Purchaser to follow the procedures set forth in this subsection shall constitute a material breach of this Agreement. Unauthorized entry onto the Lot by Purchaser, its agents or contractors shall constitute a material breach of this Agreement**.

**THE CLOSING SHALL NOT BE DELAYED DUE TO PURCHASER'S FAILURE TO SCHEDULE AND CONDUCT ALL INSPECTIONS SUFFICIENTLY IN ADVANCE OF CLOSING TO ALLOW SELLER TO ADDRESS ISSUES, IF ANY, IDENTIFIED BY THE INSPECTIONS.**

    **b. Purchaser's Indemnity**.   Purchaser assumes all responsibility for the acts of Purchaser, Purchaser's agents, contractors or representatives in exercising Purchaser's rights under this Section, and shall indemnify and hold Seller harmless, to the extent permitted by applicable law, from any loss or expense Seller may suffer as a result of any claim or damage which arises directly or indirectly out of Purchaser's exercise of its rights under this Section. Notwithstanding any other provision herein, Purchaser's indemnity of Seller pursuant to this Section shall survive Closing and the termination of this Agreement for any reason.

    **c.**   **Inspection Results**.    In the event any inspection by Purchaser or its agents or contractors reveals a purported defect in the Property, Purchaser shall provide Seller with written notice of the claim of defect and, if a professional home inspection was performed, a true and complete copy of any report produced by the home inspector. If Seller determines the claim of defect is valid, Seller shall correct or repair the defect. If Seller determines the claim of defect is not valid, Seller shall notify the Purchaser of that determination within thirty (30) days of receipt of the written notice of claim of defect. Notwithstanding any other provision herein, Seller shall not be required to correct or repair any defect in construction that does not constitute a violation of: (1) the building code of the governing jurisdiction in which the Property is located, or (2) the building guidelines and standards of the provider of the Limited Warranty pursuant to Section 14(a) below.

    **d. Orientation Walkthrough; Punch List**:   Prior to Closing, Seller and Purchaser will meet at the Property to conduct a walkthrough inspection and orientation, in accordance with Seller's standard practices (the "Initial Walkthrough"). At the conclusion of the Initial Walkthrough, Purchaser and Seller shall prepare and sign a written list of items on the Property that the parties agree should be corrected, repaired or replaced (hereinafter, the "Punch List"). Seller shall thereafter correct, repair or replace the items listed on the Punch List. Under no circumstances shall Seller be required to correct, repair or replace any items on or of the Property that are not listed on the Punch List signed by Seller. Within a reasonable amount of time after the Initial Walkthrough but prior to Closing, Seller and Purchaser shall meet at the Property to conduct a second walkthrough inspection (the "Final Walkthrough") in order to confirm which items on the Punch List have been corrected, repaired or replaced. At the conclusion of the Final Walkthrough, the parties will prepare and sign an updated Punch List reflecting the current status of each item thereon. Seller's obligation to correct, repair or replace any items that are listed on the Punch List shall survive Closing. UNDER NO CIRCUMSTANCES SHALL CLOSING BE DELAYED DUE TO SELLER'S FAILURE TO COMMENCE OR COMPLETE CORRECTION, REPAIR OR REPLACEMENT OF ANY ITEMS ON A PUNCH LIST. UNDER NO CIRCUMSTANCES SHALL FUNDS BE ESCROWED AT CLOSING TO COVER THE COST OF CORRECTION, REPAIR OR REPLACEMENT OF ANY ITEMS ON A PUNCH LIST.

**10. REAL ESTATE BROKER AND COMMISSION.**   SELLER IS A LICENSED REAL ESTATE BROKER IN THE STATE OF ALABAMA. In negotiating this Agreement, Seller has acted as its own Single Agent (see Exhibit A attached hereto and incorporated herein). Purchaser acknowledges that Seller's sales agents are employees of Seller and act on behalf of Seller only and have no professional or fiduciary duty whatsoever to Purchaser. Purchaser represents to Seller that Purchaser has not employed any real estate broker, agent or finder in connection with this Agreement, other than **Brenda McDonald**, an agent of **Goode Realty LLC** ("Co-Broker"). Purchaser shall indemnify and hold Seller harmless from and against any and all liabilities, losses, costs, damages and expenses (including attorneys' fees and expenses and costs of litigation) that Seller may suffer or incur because of any claim by any broker, agent or finder, whether or not meritorious, for any compensation with regard to this transaction arising out of any acts or contracts of Purchaser, other than the Co-Broker named above. Notwithstanding any other provision herein, the provisions of this Section shall survive Closing or termination of this Agreement for any reason. Purchaser acknowledges receipt of a copy of the Real Estate Brokerage Services Disclosure form.

      The Listing Company is DR Horton, Inc. - Birmingham. The Listing Company is (*check up to two boxes*):

        ☒ An agent of the Seller.

        ☐ An agent of the Purchaser.

        ☐ An agent of both Seller and Purchaser and is acting as a limited consensual dual agent.

        ☐ Assisting ☐ Seller / ☐ Purchaser as a transaction broker.

      The Selling Company is Goode Realty LLC. The Selling Company is (*check up to two boxes*):

        ☐ An agent of the Seller.

☒ An agent of the Purchaser.

☐ An agent of both Seller and Purchaser and is acting as a limited consensual dual agent.

☐ Assisting ☐ Seller / ☐ Purchaser as a transaction broker.

**11.  NO RELIANCE.**  Purchaser acknowledges that it has not relied upon the advice or representations, if any, of Seller or Seller's salespersons or other agents with regard to the legal and tax consequences of this Agreement or the terms and conditions of any proposed financing of the purchase of the Property. Purchaser acknowledges that if such matters are of concern to Purchaser, Purchaser must obtain independent, professional advice regarding them.

**12. WOOD INFESTATION REPORT.**   At the time of Closing, Seller shall provide Purchaser with a letter or a soil treatment report from a pest-control company licensed in Alabama certifying that the Lot has been treated within one (1) year of the date of Closing for subterranean termite infestation (the "Termite Certification"). If required by Purchaser's lender, Purchaser may obtain at Purchaser's expense a Wood Infestation Report performed by a pest-inspection company licensed in Alabama.

**13. HAZARDOUS SUBSTANCES.**  Purchaser acknowledges that Seller makes no representation or warranty with respect to the presence or absence of toxic waste, radon, hazardous materials or other undesirable substances on the Property. SELLER HEREBY DISCLAIMS ANY LIABILITY OR RESPONSIBILITY FOR THE PRESENCE OF ANY SUCH SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY.

**14. WARRANTIES AND DISCLAIMER.**

a.  **Ten-Year Limited Warranty**.  At Closing, Seller shall provide Buyer with a written, ten-year limited warranty on the House administered by Residential Warranty Corporation ("RWC"). The terms and conditions of, and exclusions from, the ten-year limited warranty shall be as set forth in that document published by RWC entitled, "LIMITED WARRANTY, 10 YEAR LIMITED WARRANTY FOR NEW HOMES," and referred to herein as the "Limited Warranty." At Closing, Seller shall deliver to Buyer the actual Limited Warranty for the House, to be validated by RWC after Closing.

b.  **Manufacturers' Warranties**.  At Closing, Seller shall assign to Purchaser all warranties, expressed or implied, which are given by the manufacturer of any appliance or product installed in the House.

c. **Disclaimer and Limitation on Seller's Liability**.  THE LIMITED WARRANTY GIVEN TO PURCHASER BY SELLER PURSUANT TO SUBSECTION 14a ABOVE IS TO THE EXCLUSION OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND SELLER HEREBY DISCLAIMS ANY AND ALL SUCH OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF HABITABILITY, MERCHANTABIITY OR FITNESS FOR A PARTICULAR PURPOSE. IN ADDITION, SELLER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER REGARDING THE PAST, PRESENT OR FUTURE CONDITION OR USE OF ANY LANDS OR AREAS SURROUNDING THE PROPERTY OR IN THE VICINITY OF THE PROPERTY. AFTER CLOSING, SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO PURCHASER OF ANY NATURE WHATSOEVER EXCEPT AS PROVIDED IN THIS SECTION 14 OF THIS AGREEMENT, IN SECTION 9(d) ABOVE AND IN SELLER'S DEED TO PURCHASER. SELLER SHALL NOT BE LIABLE FOR ANY REASON, UNDER ANY CIRCUMSTANCES, TO PURCHASER OR ANYONE CLAIMING THROUGH PURCHASER FOR MONETARY DAMAGES OF ANY KIND, INCLUDING SECONDARY, CONSEQUENTIAL, PUNITIVE, GENERAL, SPECIAL, OR INDIRECT DAMAGES.

**Initials** 

Buyer          Co-Buyer          Seller

**15.  MANDATORY BINDING ARBITRATION.**   PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) THE LIMITED WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND, BUT THE ARBITRATOR SHALL HAVE THE RIGHT TO ASSESS OR ALLOCATE THE FILING FEES AND ANY OTHER COSTS OF THE ARBITRATION AS A PART OF THE ARBITRATOR'S FINAL ORDER. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD. NOTWITHSTANDING ANY OTHER PROVISION HEREIN, ANY DISPUTES ARISING UNDER THE LIMITED WARRANTY SHALL BE MEDIATED, ARBITRATED AND/OR JUDICIALLY RESOLVED PURSUANT TO THE TERMS, CONDITIONS, PROCEDURES AND RULES OF THAT WARRANTY PROGRAM. NOTWITHSTANDING THE FOREGOING, SELLER SHALL HAVE THE RIGHT TO INTERPLEAD ALL OR ANY PART OF THE EARNEST MONEY INTO A COURT OF COMPETENT JURISDICTION AS PROVIDED FOR IN SECTION 4 HEREIN.

**Initials**

Buyer          Co-Buyer          Seller

**16. CLOSING.**   The following shall constitute the "Closing": (a) receipt by the settlement agent of all funds necessary to close the transaction, (b) receipt by the settlement agent of the fully executed Deed for immediate recording in the applicable probate court, (c) execution of the settlement statement by Purchaser, Seller and the settlement agent, and (d) payment to Seller of the net proceeds of sale due to Seller. The date on which the settlement statement is executed by all parties is referred to herein as the "Closing Date." Closing shall not be complete until Seller has received full payment of the Purchase Price. Keys to and possession of the Property will not be delivered to Purchaser until the Closing is complete. Closing shall be scheduled and conducted as follows:

   **a. Closing Date.**   The parties estimate that the Closing will take place on or before **06/29/2018** (the "Estimated Closing Date"). PURCHASER ACKNOWLEDGES THAT THE ESTIMATED CLOSING DATE IS AN ESTIMATE ONLY AND IS NOT BINDING ON EITHER PARTY. Seller shall give Purchaser notice of the final date and time of Closing (the "Closing Date") at least three (3) business days in advance. Seller shall exercise good faith and due diligence in completing construction of the House; however, SUBJECT ONLY TO THE PROVISIONS OF THIS SUBSECTION, SELLER SHALL HAVE SOLE DISCRETION IN DETERMINING THE FINAL CLOSING DATE. After the final Closing Date has been set by Seller, the parties may agree in writing to extend the Closing Date at any time. Subject only to the provisions of Section 27 below, Closing shall occur no later than that date which is two (2) years after the date that Purchaser signs this Agreement.

   **b. Exchange at Closing.**   At Closing, Seller shall deliver to Purchaser the Deed for the Property, a certificate of occupancy for the house located on the Property issued by the applicable governmental authority, and, if applicable, a certificate of final approval by the FHA or VA. At Closing, Purchaser shall pay to Seller the Purchase Price in full.

   **c. Place of Closing.**   Closing shall take place at the office of a closing agent to be selected by Purchaser in **BALDWIN**, Alabama, or at such other place as the parties may agree in advance.

   **d. Closing Costs.**   Seller shall pay the cost of the Survey, the cost of the Termite Certification, the costs for preparation of the Deed, the cost of any estoppel certificate fee charged by the Association (as defined in Section 22), the cost for preparation and issuance of an owner's policy of title insurance, and the cost of any title search. Except as may be prohibited by FHA or VA regulations, Purchaser shall pay for all other costs related to the Closing, including but not limited to all recording fees, deed and transfer taxes imposed by the State of Alabama upon the recording of the Deed, the cost of any endorsements to the owner's policy of title insurance, any capital contribution, initial assessment or transfer fee charged by the Association, any costs and expenses associated with Purchaser's financing of Purchaser's acquisition of the Property, and any closing fee charged by the closing agent.

   **e. Prorations.** All real property taxes for the current year, homeowner association dues and assessments for the current assessment period (but not homeowner association capital assessments due at or after the Closing) and hazard insurances premiums (if applicable), shall be prorated as of the Closing Date, using the most accurate information available on the Closing Date.

**17. UTILITIES AND PERSONAL PROPERTY**.   Purchaser shall transfer all utilities into Purchaser's name within three (3) business days after Closing. Purchaser shall not move any personal property onto the Property prior to Closing.

**18. DEFAULT; REMEDIES.**   The remedies specified below shall be the sole and exclusive remedies available to the parties in the event of breach of this Agreement, and shall be to the exclusion of all other remedies at law or in equity.

   **a. Purchaser's Default.**   If Purchaser defaults on any of its obligations hereunder prior to Closing, Seller's sole and exclusive remedy shall be to terminate this Agreement by written notice to Purchaser; whereupon, Seller shall retain all Earnest Money and Option Money (if any) paid by Purchaser to Seller as liquidated damages. Thereafter, neither party shall have any further liability or obligation to the other hereunder.

   **b. Seller's Default.**   If Seller defaults on any of its obligations hereunder prior to Closing, Purchaser's sole and exclusive remedy shall be either: (a) to terminate this Agreement by written notice to Seller, whereupon Purchaser shall be entitled to recover all Earnest Money and Option Money (if any) paid to Seller, or (b) to seek specific performance of this Agreement by serving written notice of default on Seller and by instituting mandatory binding arbitration of Purchaser's claim of default and demand for specific performance in accordance with Section 15 above. Notwithstanding the foregoing, subject to the provisions of Section 27 below and provided that Seller has not terminated this Agreement as a result of breach by Purchaser, if Seller is obligated by this Agreement to build a single-family residence on the Lot and Seller fails to complete construction of the residence within two (2) years of the date Purchaser signs this Agreement, then Purchaser may pursue whatever remedies it may have against Seller at law or in equity.

**19. TIME/DATE.**   The Effective Date of this Agreement shall be the date of signing of this Agreement by Seller. **Time is of the essence** as to the occurrence of all events, the satisfaction of all conditions and the performance of all obligations hereunder.

**20. RESTRICTIVE COVENANTS; HOMEOWNERS ASSOCIATION.**   Purchaser acknowledges receipt of a copy of that certain declaration of covenants, conditions and restrictions for **Woodmont** Subdivision, together with all amendments thereto (collectively, the "Declaration"). Purchaser acknowledges that the Property is subject to the Declaration and that, upon purchase of the Property, Purchaser shall personally be subject to all the provisions of the Declaration, including but not limited to provisions requiring membership in and payment of assessments to any homeowners association for the Subdivision (the "Association"). Purchaser further acknowledges that the current regular assessment due to the Association is estimated to be **TBD** annually. Purchaser acknowledges that, in addition to the regular assessment, Purchaser shall be required to pay an initial fee or assessment to the Association at Closing in the amount of **TBD**. PURCHASER FURTHER ACKNOWLEDGES THAT THE DECLARATION MAY BE AMENDED FROM TIME TO TIME AS PROVIDED THEREIN, AND THAT THE AMOUNTS TO BE PAID BY PURCHASER TO THE ASSOCIATION MAY CHANGE AT ANY TIME.

**21. SUCCESSORS AND ASSIGNS; INTERPRETATION.**   This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their heirs, successors, administrators, executors and assigns. Purchaser shall not have the right to assign Purchaser's interest in this Agreement. As required by context herein, the singular shall include the plural, and the neuter shall include the masculine and the feminine.

**22. ENTIRE AGREEMENT; AMENDMENT.**   This document contains the sole and entire agreement between the parties hereto with regard to the Property. All prior discussions have been merged into this Agreement. No representation, statement, promise or inducement shall be binding upon either party hereto unless specifically stated in this Agreement. This Agreement may not be modified

except by a writing signed by both parties.

**23. SEVERABILITY.**   If any provision of this Agreement shall be declared invalid or unenforceable by laws applicable thereto, or unenforceable as to certain parties, then the performance of such provision shall be excused by the parties hereto and the remaining provisions of this Agreement shall remain in full force and effect.

**24. NO-WAIVER.**   Any failure or delay of Purchaser or Seller to enforce any term of this Agreement shall not constitute a waiver of such term, it being explicitly agreed that such a waiver must be specifically stated in a writing delivered to the other party in compliance with Section 28 below.   Any such waiver by Purchaser or Seller shall not be deemed to be a waiver of any other breach or of a subsequent breach of the same or any other term.

**25. ADDENDA AND EXHIBITS.**

    **a.**   **Addenda.**   The following Addenda are attached hereto and incorporated herein:

        ☑ (1) Addendum 1, <u>Builder's Referral Incentives and Contributions Addendum</u>

        ☑ (2) Addendum 2, SELECT ONE:

            ☐ <u>New Construction</u>

            ☐ <u>Construction in Progress</u>

            ☒ <u>Construction Completed</u>

        ☐ Addendum 3, <u>Closing of Current Residence Contingency</u>

        ☒ Addendum 4, <u>Co-Broker Addendum</u>

        ☐ Addendum 5, <u>Alternative Incentive Addendum</u>

        ☐ Addendum 6, <u>Special Stipulations</u>

        ☒ Addendum 7, <u>Real Estate Certification</u>

        ☐ Addendum 8, <u>Model House</u>

        ☐ Addendum 9, <u>Back-Up Contract</u>

        ☒ Subdivision-specific addenda

    **b.**   **Exhibits.**   The following Exhibits are attached hereto and incorporated herein:

        (1) Exhibit A, Home Features and Options

        (2) Exhibit B, Real Estate Brokerage Services Disclosure

        (3) Exhibit C, Estimate of Purchaser's Net Proceeds

**26. NOTICE.**   Except when specifically provided otherwise herein**,** any notices required to be given hereunder must be in writing. Notice shall be deemed delivered upon receipt or refusal if deposited in the United States Mail, Certified Mail, Return Receipt Requested, postage prepaid, properly addressed to the party to be served. Notice shall also be deemed given if delivered to the address for service of notice shown below by Federal Express, UPS or other nationally recognized overnight carrier service, with no signature or receipt required. Notice to Purchaser also shall be deemed given if delivered to the email address for service of notice shown under Purchaser's signature. Each party warrants that its correct mailing address for service of notice is shown below. Purchaser warrants that its correct telephone number and email address are shown below. A party may change its address for service of notice by giving the other party written notice of the change of address.

**27. EXCUSED DELAYS.**   Notwithstanding any other provision herein, if Seller is delayed in performing any of its obligations hereunder or meeting any specified completion dates by labor disputes, fire, delays in deliveries, adverse weather conditions, unanticipated damage to or destruction of the Property, governmental controls or moratoria, acts of God or any other causes beyond Seller's reasonable control, then the time-period specified herein for performance of such obligation and/or meeting such completion date shall be extended a sufficient number of working days to enable and allow Seller to perform and/or complete the obligation.

**28. OFFER.**   This instrument shall be regarded as an offer by the first party to sign until fully executed by both parties, at which time it shall become binding on both parties.

**29. ELECTRONIC SIGNATURES AND TRANSMISSIONS.**   This Agreement may be executed by electronic means via DocuSign. Such signatures shall be deemed to constitute originals for all purposes hereunder. In addition, if either party transmits executed documents in electronic format via facsimile or email, then the other party may rely upon such documents as if they were executed originals.

      **WHEN SIGNED BY BOTH PARTIES, THIS DOCUMENT WILL BECOME A BINDING CONTRACT IMPOSING LEGALLY ENFORCEABLE OBLIGATIONS UPON YOU. SELLER'S SALES REPRESENTATIVE DOES NOT HAVE AUTHORITY TO EXECUTE THIS CONTRACT ON BEHALF OF SELLER OR OTHERWISE BIND SELLER. IF YOU DO NOT FULLY UNDERSTAND THIS DOCUMENT OR IF YOU DO NOT FEEL IT MEETS YOUR NEEDS, YOU SHOULD CONSULT A REAL ESTATE ATTORNEY BEFORE SIGNING IT.**

IN WITNESS WHEREOF, the parties hereto have executed this Home Purchase Agreement on the dates indicated below.

**PURCHASER:**                                  **SELLER:**

*DocuSigned by:*

*Ricky W. Ramey*

—2AD02AB4328C43C...                5/28/2018

**Buyer:** Ricky W. Ramey        Date

**Co-Buyer:** Ronnie Lane Ramey

5/28/2018
Date

Purchaser's Current Mailing Address:
P.O. Box 10063
Jackson, TN    38308
US
Purchaser's Home Phone:
        Mobile Phone: (731) 616-5926
        Work Phone:
Purchaser's Email: ramey1104@outlook.com

Co-Buyer's Current Mailing Address:
P.O. Box 10063Jackson, TN 38308
Co-Buyer's Home Phone:
        Mobile Phone: (731) 267-4936
        Work Phone:
Co-Buyer's Email: ramey1104@outlook.com

**DR Horton, Inc. - Birmingham**

william C Moody

Officer, D.R. Horton

5/29/2018
Date

Seller's Address:
DR Horton, Inc. - Birmingham
25366 Profit Dr
Daphne, AL    36526
**MAIN:** (251) 447-0329

Seller's Phone: (251) 447-0329

*For Internal Purposes Only:*
Seller's Sales Representative:

Michele M Murdock

**Sales Rep:** Michele M Murdock

5/26/20

Dat

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643

Buyer(s): Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 79//, **Address:** 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job: 224650079**
Printed: 5/26/2018

# Options and Premiums
## Exhibit A

Seller will include the following upgrades ("Upgrades") at the prices indicated, unless otherwise agreed upon in writing. Payment for the Upgrades (the "Upgrade Money") must be made simultaneously with the execution of this Agreement. In the event Seller omits the installation of any Upgrade item, Seller's responsibility shall be limited to a refund of the listed price or allowance. Any such omission shall not invalidate this Agreement, constitute a breach of its terms nor give rise to any claim damages against Seller. Purchaser agrees that the Upgrade Money shall be delivered to Seller simultaneously with the execution of this Agreement. The Upgrade Money shall not be held in escrow by Seller, shall be non-refundable, and shall not be returned to Purchaser under any circumstances. The Upgrades are:

**Options Selected By Buyer:**

| Color Selections | | | | |
|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User |
| BATH CABINET COLOR<br>**Location:**<br>**Notes:** | BISQUE *PAINTED* | 0 | 05/26/2018 | |
| BEDROOM ONE FLOORING COLOR<br>**Location:**<br>**Notes:** | Temple Stone | 0 | 05/26/2018 | |
| BEDROOM THREE FLOORING COLOR<br>**Location:**<br>**Notes:** | Temple Stone | 0 | 05/26/2018 | |
| BEDROOM TWO FLOORING COLOR<br>**Location:**<br>**Notes:** | Temple Stone | 0 | 05/26/2018 | |
| BRICK COLOR<br>**Location:**<br>**Notes:** Acme Brick with Acme Premium Buff | Safford | 0 | 05/26/2018 | |
| CABINET HARDWARE COLOR<br>**Location:**<br>**Notes:** #154 SS | Stainless Steel | 0 | 05/26/2018 | |
| CEILING COLOR<br>**Location:**<br>**Notes:** | Accessible Beige | 0 | 05/26/2018 | |
| DINING ROOM FLOORING COLOR<br>**Location:**<br>**Notes:** | Toasted Chestnut | 0 | 05/26/2018 | |
| DISHWASHER COLOR<br>**Location:**<br>**Notes:** Frigidaire | Stainless Steel | 0 | 05/26/2018 | |
| DOOR HINGE COLOR<br>**Location:**<br>**Notes:** | brushed nickel | 0 | 05/26/2018 | |
| FIREPLACE TILE COLOR<br>**Location:**<br>**Notes:** Grout: #186 Khaki | Ecru AR01 | 0 | 05/26/2018 | |
| FOYER FLOORING COLOR<br>**Location:**<br>**Notes:** | Toasted Chestnut | 0 | 05/26/2018 | |
| FRONT DOOR COLOR<br>**Location:**<br>**Notes:** | Brown (match shutters) | 0 | 05/26/2018 | |
| GARAGE DOOR COLOR<br>**Location:**<br>**Notes:** SW6148 (To match Wicker soffit/trim and tan windows) | Wool Skein | 0 | 05/26/2018 | |
| GRANITE KIT COUNTERTOP COLOR<br>**Location:**<br>**Notes:** | St. Cecelia | 0 | 05/26/2018 | |
| HALL BATH FLOORING COLOR<br>**Location:**<br>**Notes:** | Toasted Chestnut | 0 | 05/26/2018 | |



Initials _____  5/28/2018  _____  5/28/2018
Buyer      Date      Co-Buyer   Date

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643

**Buyer(s):** Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 79//, **Address:** 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job: 224650079**
**Printed:** 5/26/2018

| Color Selections | | | | |
|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User |
| INTERIOR DOOR STYLE<br>**Location:**<br>**Notes:** | RIVERSIDE | 0 | 05/26/2018 | |
| INTERIOR PAINT COLOR<br>**Location:**<br>**Notes:** SW7036 | Accessible Beige | 0 | 05/26/2018 | |
| INTERIOR TRIM PAINT COLOR<br>**Location:**<br>**Notes:** | White | 0 | 05/26/2018 | |
| KITCHEN CABINET COLOR<br>**Location:**<br>**Notes:** | BISQUE *PAINTED* | 0 | 05/26/2018 | |
| KITCHEN FLOORING COLOR<br>**Location:**<br>**Notes:** | Toasted Chestnut | 0 | 05/26/2018 | |
| LIGHTING COLOR<br>**Location:**<br>**Notes:** Stefan | Brushed nickel | 0 | 05/26/2018 | |
| MASTER BED FLOORING COLOR<br>**Location:**<br>**Notes:** | Temple Stone | 0 | 05/26/2018 | |
| MASTER BTH GRANITE TOP COLOR<br>**Location:**<br>**Notes:** | St. Ceceilia | 0 | 05/26/2018 | |
| MICROWAVE HOOD COLOR<br>**Location:**<br>**Notes:** Frigidaire microwave | Stainless Steel | 0 | 05/26/2018 | |
| MORTAR COLOR<br>**Location:**<br>**Notes:** Acme Premium Buff with Safford brick | Premium Buff | 0 | 05/26/2018 | |
| OTHER BTH GRANITE TOP COLOR<br>**Location:**<br>**Notes:** | St. Cecelia | 0 | 05/26/2018 | |
| PLUMBING HARDWARE COLOR<br>**Location:**<br>**Notes:** | chrome | 0 | 05/26/2018 | |
| ROOF COLOR<br>**Location:**<br>**Notes:** | driftwood | 0 | 05/26/2018 | |
| SHOWER DOOR COLOR<br>**Location:**<br>**Notes:** | chrome | 0 | 05/26/2018 | |
| SHUTTER COLOR<br>**Location:**<br>**Notes:** | Brown | 0 | 05/26/2018 | |
| SIDING / SHAKE COLOR<br>**Location:**<br>**Notes:** | B&B Soft Maple (Royal) | 0 | 05/26/2018 | |
| UTILITY FLOORING COLOR<br>**Location:**<br>**Notes:** | Toasted Chestnut | 0 | 05/26/2018 | |
| VINYL / TRIM SOFFIT COLOR<br>**Location:**<br>**Notes:** | Wicker | 0 | 05/26/2018 | |
| WINDOW COLOR<br>**Location:**<br>**Notes:** | tan | 0 | 05/26/2018 | |

**Selected Options**



| Initials | | | | |
|---|---|---|---|---|
| | Buyer | Date | Co-Buyer | Date |
| | | 5/28/2018 | | 5/28/2018 |

Buyer(s): Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 79//, **Address:** 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job: 224650079**
**Printed:** 5/26/2018

## 25 – Appliances

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 26DRY01W P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $ 675.00 | $ 675.00 |
| **Color:** | | | **Location:** | | | |
| APPLIANCE DRYER LVL 1 WHITE FRIGIDAIRE- TO MATCH TOP LOAD WASHER | | | | | | |
| 26REF02S P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $1,575.00 | $1,575.00 |
| **Color:** | | | **Location:** | | | |
| APPL. REFRIGERATOR STAINLESS FRIGIDAIRE-SIDE BY SIDE | | | | | | |
| 26WSH01W P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $ 700.00 | $ 700.00 |
| **Color:** | | | **Location:** | | | |
| APPLIANCE WASHER LVL 1 WHITE FRIGIDAIRE - TOP LOAD | | | | | | |

**Sub-Total** **$2,950.00**

## 17 – Cabinets

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 17CPTL02 P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $2,300.00 | $2,300.00 |
| **Color:** Bisque | | | **Location:** | | | |
| CABINETS-CAPITAL-DESIGNER PAINT PF PANEL-BEADBOARD KNEE WALL-BASE HEIGHT VANITIES- | | | | | | |

**Sub-Total** **$2,300.00**

## 12 – Fireplaces

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 12VLGSFP P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $3,425.00 | $3,425.00 |
| **Color:** | | | **Location:** | | | |
| FIREPLACE GAS VL W MANTLE,LOGSTILE | | | | | | |

**Sub-Total** **$3,425.00**

## 91 – Garage Doors

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 91CARDOR P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $ 0.00 | $ 0.00 |
| **Color:** | | | **Location:** | | | |
| CARRIAGE DOOR HARDWARE | | | | | | |

**Sub-Total** **$ 0.00**

## 13 – Plumbing

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 13GASDRP P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $ 650.00 | $ 650.00 |
| **Color:** | | | **Location:** | | | |
| GAS DROP | | | | | | |

**Sub-Total** **$ 650.00**

## 00 – Structural Options

| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 00SIDGAR P | 0 | 05/26/2018 | Michele M Murdock | 1.0000 | $ 0.00 | $ 0.00 |
| **Color:** | | | **Location:** Right side | | | |
| SIDE ENTRY GARAGE | | | | | | |

**Sub-Total** **$ 0.00**



| Initials | RWR | 5/28/2018 | RLR | 5/28/2018 |
|---|---|---|---|---|
| | Buyer | Date | Co-Buyer | Date |

**Buyer(s):** Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 79//, **Address:** 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job: 224650079**
Printed: 5/26/2018

| Color Selections | | | | | |
|---|---|---|---|---|---|
| Option # | Color | | Rev. # | Rev. Date | User |

| 56 – Window Treatments | | | | | | | |
|---|---|---|---|---|---|---|---|
| Option # | Rev. # | Rev. Date | User | | Qty. | Unit Price | Ext. Price |
| 56WDBL01 P | 0 | 05/26/2018 | Michele M Murdock | | 1.0000 | $1,100.00 | $1,100.00 |
| **Color:** WINDOW BLND 2 INCH FAUX WOOD | | | **Location:** | | | | |

| | | |
|---|---|---|
| | **Sub-Total** | **$1,100.00** |
| | **Total:** | **$10,425.00** |

**SALES SUMMARY**

| | | | |
|---|---|---|---|
| Base Price w/o Adjustments | | $209,900.00 | |
| Adjustment(s) | +/- | $  0.00 | |
| Adjusted Base Price | = | $209,900.00 | |
| | | | |
| Lot Premium w/o Adjustment | | $  0.00 | |
| Adjustment(s) | +/- | $  0.00 | |
| Adjusted Lot Premium | = | $  0.00 | |
| | | | |
| Adjusted Base Price | | $209,900.00 | |
| Adjusted Lot Premium | + | $  0.00 | |
| Total Options w/o adjustments | + | $10,425.00 | |
| Total Option Adjustment | - | <$5,425.00> | |
| Total Sales Price | = | $214,900.00 | |

Purchaser acknowledges required Option money in the amount of **$  0.00**.  Purchaser further acknowledges Option money paid is non-refundable and shall be retained by Seller should Sale not close.  Funds will be credited to Purchaser at closing.

| Purchaser: | Seller: |
|---|---|
| DocuSigned by: *Ricky W. Ramey* | DR Horton, Inc. - Birmingham |
| 2AD02AB4328C43C...     5/28/2018 | DocuSigned by: *William C Moody* |
| **Buyer:** Ricky W. Ramey     Date | BB0850F2BB174DD...     5/29/2018 |
| DocuSigned by: *Ronnie Lane Ramey* | william c moody     Date |
| 723E785867F9414...     5/28/2018 | Officer, D.R. Horton |
| **Co-Buyer:** Ronnie Lane Ramey     Date | |

Initials   RWR   5/28/2018   RLR   5/28/2018
       Buyer   Date   Co-Buyer   Date

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643

**Buyer(s):** Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 79//, **Address:** 15646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job:** **224650079**
**Printed:** 5/26/2018



### ADDENDUM 1
### BUILDER'S REFERRAL INCENTIVES AND CONTRIBUTIONS ADDENDUM

This **ADDENDUM** is attached to and made a part of that Home Purchase Agreement between **DR Horton, Inc. - Birmingham**, as Seller, and **Ricky W. Ramey and Ronnie Lane Ramey** as Purchaser (the "Purchase Agreement"), regarding that parcel of real estate located in **BALDWIN** County, **AL**, briefly described as Lot **79**, **Woodmont**, and referred to in the Purchase Agreement as the "Lot." All terms defined in the main text of the Purchase Agreement shall have the same meanings when used in this Addendum. This Addendum, together with the Purchase Agreement, constitutes the sole and entire agreement between Seller and Purchaser with regard to any incentives, allowances, adjustments, credits, discounts, rebates or other contributions of any kind or amount (collectively, the "Referral Incentives and Contributions") made, or to be made, by Seller to Purchaser in connection with Seller's referral of Purchaser to SELLER'S PREFERRED MORTGAGE LENDER(S) DESCRIBED BELOW ("PREFERRED LENDER"), and there are no agreements regarding such Referral Incentives and Contributions, whether written or unwritten, expressed or implied, between the parties except as set forth in this Addendum. In the event of any conflict between the terms and provisions of this Addendum and the terms and provisions of the main text of the Purchase Agreement, the terms and provisions of this Addendum shall control.

Purchaser acknowledges receipt of that document entitled "Notice of Seller's Business Affiliations" (the "Affiliation Notice"), and Purchaser confirms its understanding that Seller has an affiliation with DHI Mortgage Company, Ltd. ("DHI Mortgage") and that Purchaser is not required to use DHI Mortgage or any Preferred Lender (described below) as a condition of Purchaser's purchase of the Property or Purchaser's access to settlement services in connection with the purchase of the Property. The parties state, acknowledge and agree as follows:

1. Seller shall provide for the benefit of Purchaser the Referral Incentives and Contributions listed in Section 2 below, **provided that** Purchaser chooses to use PREFERRED LENDER to finance the purchase of the Property and **provided that each and all of the following occur**:

    **a.** Purchaser applies to PREFERRED LENDER for a mortgage loan to finance the purchase of the Property within the timeframe provided under Section 2(b) of this Purchase Agreement;

    **b.** Purchaser's loan application is approved by PREFERRED LENDER, and PREFERRED LENDER actually funds the loan and finances the purchase of the Property;

    **c.** Purchaser closes on the purchase of the Property on or before the final date and time for Closing set by Seller pursuant to subsection 16(a) of the Purchase Agreement; and

    **d.** Purchaser uses DHI Title of Alabama, Inc. to act as settlement agent and close the purchase of the Property.

2. Provided that all the above conditions are satisfied and met in a timely manner, Purchaser shall be entitled to a contribution from Seller towards Purchaser's closing costs in an amount up to **$5,500.00**. This contribution, **up to** the applicable limit, shall be applied against closing costs actually charged to Purchaser, in the following order (as applicable): Origination Charge, Origination Fee, Upfront Unfinanced Mortgage Insurance (if applicable).

If any of the maximum amount of contribution remains unapplied after payment of all of the above listed closing costs, then the remainder shall be applied against other usual and customary closing costs: (a) actually incurred by Purchaser in closing on the purchase and sale of the Property, and (b) shown as charges to Purchaser on the Closing Disclosure. Notwithstanding the foregoing: (i) any contribution by Seller to Purchaser's closing costs shall be subject to Purchaser's loan program and any lender guidelines or restrictions, (ii) no portion of the maximum amount of contribution may be applied as a credit to, or in partial payment of, the Purchase Price of the Property or disbursed to Purchaser, and (iii) any unapplied portion of the maximum amount of contribution shall be forfeited by Purchaser.

3. The Preferred Lender relating to this Builder's Referral Incentive and Contributions Addendum is DHI Mortgage. More information regarding DHI Mortgage is available at: www.dhimortgage.com.

**Purchaser's decision to use any lender other than PREFERRED LENDER will not affect any concessions, incentives or discounts offered by Seller for the purchase of the Property other than the closing cost contributions described in Section 2 above.**

**IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATE SHOWN BELOW.**

**Purchaser:**

DocuSigned by:
*Ricky W. Ramey*
—————————————————     5/28/2018
2AD02AB4328C43C...          Date
**Buyer:** Ricky W. Ramey

DocuSigned by:
*Ronnie Lane Ramey*
—————————————————     5/28/2018
723E785867F9414...          Date
**Co-Buyer:** Ronnie Lane Ramey

**Seller:**

**DR Horton, Inc. - Birmingham**

DocuSigned by:
*William C Moody*
—————————————————     5/29/2018
BB0850F2BB174DD...          Date
William C Moody
Officer, D.R. Horton



### Notice of Seller's Business Affiliations

**To:**    **RICKY W. RAMEY AND RONNIE LANE RAMEY**
        **[HOMEBUYER(S)]**

**From:**    **DR HORTON, INC. - BIRMINGHAM**        **DATE:**   **05/26/2018**
        **Daphne, AL**
        **[Seller]**

**Property:**    **15646 TROON DRIVE, FOLEY, AL  36535**

This is to give you notice that D.R. Horton, Inc.-Birmingham, has a business relationship with:

| **DHI TITLE OF ALABAMA, INC.** | **DHI MORTGAGE COMPANY, LTD.** | **D.R. HORTON INSURANCE AGENCY, INC.** |
|---|---|---|
| 25355 Profit Drive | 25355 Profit Drive | 1341 Horton Circle |
| Daphne, AL 36526 | Daphne, AL 36526 | Arlington, TX  76011 |

The nature of this business relationship is that these companies are corporate affiliates, each being wholly or partially owned by, or by a subsidiary of, the same parent corporation.  Because of this relationship, this referral may provide D.R. Horton, Inc. a financial or other benefit.

Set forth below is the estimated charge or range of charges by DHI Mortgage Company, Ltd. and DHI Title of Alabama, Inc. You are **NOT** required to use this company as a condition of your purchase of the Property from D.R. Horton, Inc.-Birmingham or as a condition of your application for, or settlement of, a mortgage loan on the Property in connection with your purchase. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| **DHI MORTGAGE COMPANY, LTD.** | | **DHI  TITLE OF ALABAMA, INC.** | |
|---|---|---|---|
| **Service** | **Charge or Range** | **Service** | **Charge or Range** |
| Loan Origination Charge: | 0.00% of Loan Amount plus $895.00 | Title Services and Lender Title Insurance: | $675.00 - $1,100.00 |
| | An additional 1% of the Loan Amount may apply for certain Affordable Housing Loan Programs | Owner's Title Insurance: | $800.00 – $1,000 |

    **\*\*DHI Title charge estimates are based on an average home price of $300,000. Title insurance based on the title insurer's schedule of premium rates filed with the Commissioner of the Alabama Department of Insurance. Adjustments to Sales Price, Loan Amount and Lender requirements will impact the cost of your title insurance. Mortgage fees may vary depending upon whether the loan is originated or brokered by DHI Mortgage Company, Ltd.**

**Mortgage fees may vary depending upon whether the loan is originated or broker by DHI Mortgage Company, Ltd.**

      **NOTE: A Loan Estimate of all settlement charges will be provided to you at or within three business days after loan application.  You may be entitled to additional builder discounts/credits paid by the seller to purchase multiple settlement services as set forth in the Builder's Incentive and Concessions Addendum to your purchase contract.**

| **D. R. HORTON INSURANCE AGENCY, INC.** |
|---|
| D.R. HORTON INSURANCE AGENCY, INC. is a licensed insurance agent that offers policies of property insurance as agent for one or more insurance companies qualified to transact insurance business in the State of Alabama. You will be provided a separate proposal or quote of the terms and conditions of any policy of insurance offered by D.R. HORTON INSURANCE AGENCY, INC. in which you express an interest. For comparison purposes, the cost for a hazard insurance policy for a home valued at $300,000 with commonly selected coverage items and deductibles would range between:  $325 and $15,436 per annum.  The specific premium depends on various factors, including but not limited to, the value of the home, the location of the home, deductibles selected, and the amount of coverage selected.  The quote will set out the estimated premium and other charges, or range of charges, by D.R. HORTON INSURANCE AGENCY, INC. for its insurance products or services. |

**ACKNOWLEDGMENT:**
I/we have read this disclosure form and understand that **D.R. HORTON, INC.-BIRMINGHAM** referring me/us to purchase the above-described settlement services from **DHI MORTGAGE COMPANY, LTD., DHI TITLE OF ALABAMA, INC.** and **D.R. Horton Insurance Agency, Inc.,** and may receive a financial or other benefit as the result of this referral.

**Purchaser:**

DocuSigned by:
*Ricky W. Ramey*
———————————————————  5/28/2018
2AD02AB4328C43C...
**Buyer:** Ricky W. Ramey           Date

**Seller:**
**DR Horton, Inc. - Birmingham**
DocuSigned by:
*William C Moody*
———————————————————  5/29/2018
BB0850F2BB174DD...
William C Moody           Date
Officer, D.R. Horton



**Notice of Seller's Business Affiliations**

DocuSigned by:

Ronnie Lane Ramey

—723E785867F9414..._____    5/28/2018

**Co-Buyer:** Ronnie Lane Ramey    Date

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643      15646 TROON DRIVE, **Sales Rep:** Michele M Murdock      **Job: 224650079**

**Printed:** 5/26/2018

## ADDENDUM 2
## COMPLETED CONSTRUCTION ADDENDUM

       This Addendum is attached to and made a part of that Home Purchase Agreement (the "Agreement") between **Ricky W. Ramey and Ronnie Lane Ramey,** as Purchaser and **DR Horton, Inc. - Birmingham,** as Seller, regarding that parcel of land located in **BALDWIN** County, Alabama, briefly described as Lot **0079, Woodmont** and referred to in the Agreement as the "Lot." All terms defined in the main text of the Agreement shall have the same meanings when used in this Addendum. Purchaser and Seller further agree as follows:

**1. CONSTRUCTION OF HOUSE.** Seller has completed construction of a single-family ⊗ detached ○ townhouse residence (the "House") according to **JASMINE**, Elevation **C** on the Lot, and a Certificate of Occupancy has been issued for the House. Purchaser has thoroughly examined the completed House prior to signing this Agreement.

**2. PURCHASE PRICE.** The base price for the House, including those features listed on that Included Features List attached hereto as Exhibit A and incorporated herein, is **Two Hundred Nine Thousand Nine Hundred and 00/100** (the "Base Price"). The premium charged for the Lot (the "Lot Premium") is . The total price of all options included in the construction of the House and any additional options selected by Purchaser as of the date shown below is **Five Thousand and 00/100** (see Exhibit A attached hereto and incorporated herein for an itemization of those options and their prices). Therefore, the initial Purchase Price for the Property, as stated in Section 2 of the Agreement, is:

| | |
|---|---|
| Base Price | $209,900.00 |
| Plus Lot Premium | $ 0.00 |
| Plus Options | $10,425.00 |
| Total Purchase Price | $214,900.00 |

The Purchase Price is subject to adjustment by amendment to this Agreement as provided herein.

**3. OPTIONS; CHANGES.** After Purchaser's execution of this Agreement, Seller shall not be required to allow any changes to options to be included in the House. If Purchaser requests a change in options and Seller agrees to the change, Purchaser shall pay to Seller a Change Fee in the amount of Two Hundred Fifty Dollars ($250.00) for each such change at the time the request is approved by Seller. Any Change Fee paid shall be nonrefundable and shall not be credited against the Purchase Price. Any changes to options shall not be effective unless evidenced by a written amendment to this Agreement. At the time of execution of that amendment, Purchaser shall pay to the Seller the total increase in the Purchase Price resulting from the change in options (the "Option Money"). Any Option Money paid to Seller at any time shall not be held in escrow, and shall be nonrefundable to Purchaser except in the event of breach of this Agreement by Seller. Upon Closing, all Option Money previously paid to Seller shall be credited to Purchaser against the Purchase Price. If Seller omits any option from the construction of the House, Purchaser shall be entitled to an additional credit at Closing against the Purchase Price in the amount of the specified price of the omitted option. Failure by Seller to install an option shall not constitute a breach of this Agreement by Seller, and Purchaser shall have no rights or remedies resulting from such failure except the right to a credit at Closing.

**4. PURCHASER'S INQUIRIES.** Purchaser shall direct all inquiries and questions to Seller's on-site associate. The on-site associate will provide Purchaser with timely responses; however, the associate does not and shall not have authority to change the terms of this Agreement in any manner. This Agreement may be changed or modified only by a written amendment duly executed by both Purchaser and Seller. Purchaser acknowledges that Seller's sales associates, superintendents, closing staff, warranty staff and other employees **do not** have authority to modify this Agreement. Only an authorized corporate officer of Seller may modify this Agreement on Seller's behalf.
IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATES SHOWN BELOW.

| Purchaser: | Seller: |
|---|---|
| | **DR Horton, Inc. - Birmingham** |
| *Ricky W. Ramey* | *William C Moody* |
| 2AD02AB4328C43C...    5/28/2018 | BB0850F2BB174DD...    5/29/2018 |
| _____ _____ | |
| **Buyer:** Ricky W. Ramey    Date | _____ _____ |
| | william C Moody    Date |
| *Ronnie Lane Ramey* | |
| 723E785867F9414...    5/28/2018 | Officer, D.R. Horton |
| | *Michele M Murdock* |
| _____ _____ | 1B5FCB9A28E6439...    5/26/2018 |
| **Co-Buyer:** Ronnie Lane Ramey    Date | _____ _____ |
| | **Sales Rep:** Michele M Murdock    Date |



## ADDENDUM 7
## REAL ESTATE CERTIFICATION

**PURCHASER:**

Ricky W. Ramey
Ronnie Lane Ramey
P.O. Box 10063
Jackson, TN 38308

**SELLER:**
DR Horton, Inc. - Birmingham
25366 Profit Dr
Daphne, AL 36526

**DATE:** May 26, 2018

This Real Estate Certification ("**Certification**") is attached to and forms a part of the Home Purchase Agreement ("**Agreement**"), executed between Purchaser and Seller for the Property described in the Agreement. Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Agreement.

Purchaser, Seller and Co-Broker hereby certify that:

1. The terms, conditions, representations and warranties contained in the Agreement are true, to the best of their knowledge and belief; and

2. Any other agreement entered into by any parties in connection with the subject real estate transaction is part of, or attached to, the Agreement.

**PURCHASER**

DocuSigned by:
*Ricky W. Ramey*
2AD02AB4328C43C...

**Buyer:** Ricky W. Ramey

5/28/2018
Date

DocuSigned by:
*Ronnie Lane Ramey*
723E785867F9414...

**Co-Buyer:** Ronnie Lane Ramey

5/28/2018
Date

**BROKER:**

DocuSigned by:
*Brenda McDonald*
44686EC0A03F4CD...

**Broker Agent:** Brenda McDonald

5/28/2018
Date

**SELLER:**

**DR Horton, Inc. - Birmingham**

DocuSigned by:
*William C Moody*
BB0850F2BB174DD...

William C Moody

5/29/2018
Date

Officer, D.R. Horton

.5646 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job: 224650079**
Printed: 5/26/2018



**EXHIBIT B**
**REAL ESTATE BROKERAGE SERVICES DISCLOSURE**

**Alabama law requires you, the consumer, to be informed about the types of services which real estate licensees may perform. The purpose of this disclosure is to give you a summary of these services.**

A **SINGLE AGENT** is a licensee who represents only one party in a sale. That is, a single agent represents his or her client. The client may be either the seller or the buyer. A single agent must be completely loyal and faithful to the client.

A **SUBAGENT** is another agent/licensee who also represents only one party in a sale. A subagent helps the agent represent the same client. The client may be either the seller or the buyer. A subagent must also be completely loyal and faithful to the client.

A **LIMITED CONSENSUAL DUAL AGENT** is a licensee for both the buyer and the seller. This may only be done with the written, informed consent of all parties. This type of agent must also be loyal and faithful to the client, except where the duties owed to the clients conflict with one another.

A **TRANSACTION BROKER** assists one or more parties, who are customers, in a sale. A transaction broker is not an agent and does not perform the same services as an agent.

Alabama law imposes the following obligations on all real estate licensees to all parties, no matter their relationship:

**1.** To provide services honestly and in good faith;

**2.** To exercise reasonable care and skill;

**3.** To keep confidential any information gained in confidence, unless disclosure is required by law or duty to a client, the information becomes public knowledge, or disclosure is authorized in writing;

**4.** Present all written offers promptly to the seller;

**5.** Answer your questions completely and accurately. Further, even if you are working with a licensee who is not your agent, there are many things the licensee may do to assist you. Some examples are:

    A. Provide information about properties;

    B. Show properties;

    C. Assist in making a written offer;

    D. Provide information on financing.

You should choose which type of service you want from a licensee, and sign a brokerage service agreement. If you do not sign an agreement, by law the licensee working with you is a transaction broker. The licensee's broker is required by law to have on file an office policy describing the company's brokerage services. You should feel free to ask any questions you have. The Alabama Real Estate Commission requires the real estate licensee to sign, date, and provide you a copy of this form. Your signature is not required by law or rule, but would be appreciated.

**Purchaser:**

DocuSigned by:
*Ricky W. Ramey*
—2AD02AB4328C43C...
                5/28/2018
**Buyer:** Ricky W. Ramey      Date

DocuSigned by:
*Ronnie Lane Ramey*
—723E785867F9414...
                5/28/2018
**Co-Buyer:** Ronnie Lane Ramey     Date

**Seller:**
**DR Horton, Inc. - Birmingham**

DocuSigned by:
*William C Moody*
—BB0850F2BB174DD...
                5/29/2018
william C Moody          Date
Officer, D.R. Horton

DocuSigned by:
*Michele M Murdock*
—1B5FCB9A28E6439...
                5/26/2018
**Sales Rep:** Michele M Murdock    Date

Statutory Authority: Code of Ala. 1975, §§ 34-27-8, 34-27-82, 34-27-87.
History: New Rule: Filed January 25, 1996; effective February 29, 1996. Amended: Filed August 3, 1998; effective September 7, 1998. Amended: Filed February 27, 2002; effective April 3, 2002. Amended: Filed November 26, 2002; effective December 31, 2002.

We apologize for this inconvenience but we need your permission! D.R Horton has negotiated special savings on ADT security services for your home. Due to Federal "Do Not Call" and "Do Not Email" regulations, we cannot tell you about these great offers without your consent. Please take a few moments to provide us with your contact information and contact consent below.

Thanks and congratulations on your new home!

## Express Written Consent Form ADT LLC Marketing Authorization

I, the undersigned, hereby authorize ADT LLC ("ADT"), directly or through its affiliates and marketing partners, to contact me from time-to-time by telephone and/or email with information and offers about products and services that might interest me. I also acknowledge and agree that D.R. Horton shall have no obligation or liability for any products or services obtained from ADT. By signing and dating below, I acknowledge that I am authorized to receive solicitations at the telephone number(s), email(s), or mailing address(es) shown below, even if such number(s),email address(es), or mailing address(es) are lised on any "do not call" or other registry or list and my authorization is given freely and is not part of or contigent upon any agreement with ADT.

Mobile/Cell Phone #: (731) 616-5926      Work Phone #:

Home Phone #:

Email Address (primary):    ramey1104@outlook.com

Email Address (secondary):    ramey1104@outlook.com

My New Home – Address /Direct Mail:      Projected Closing Date:

Community/Subdivision  Name:    Woodmont

Street # & Name:   15646 TROON DRIVE
City:  FOLEY State: AL    Zip/Postal Code:   36535

Name Printed: Ricky W. Ramey, Ronnie Lane Ramey

**Purchaser:**

DocuSigned by:

*Ricky W. Ramey*

2AD02AB4328C43C...

5/28/2018

_____  _____

**Buyer:** Ricky W. Ramey          Date

DocuSigned by:

*Ronnie Lane Ramey*

723E785867F9414...

5/28/2018

_____  _____

**Co-Buyer:** Ronnie Lane Ramey       Date

Please forward signed paperwork to:     Homebuyerinfo@ADT.com

# Closing Disclosure Contact Information

Below is information intended to assist interested parties with the completion of the Closing Disclosure.

## GENERAL INFORMATION

| | | | |
|---|---|---|---|
| **Buyer(s):** | Ricky W. Ramey and Ronnie Lane Ramey | | |
| **Subdivision:** | Woodmont | | |
| **Lot Address:** | 15646 TROON DRIVE, FOLEY, AL  36535 | | |
| **Lot/Block:** | 79/ | **Builder Key:** | 224650079 |
| **Total Price:** | $214,900.00 | **Ratify Date:** | |

## REAL ESTATE BROKER INFORMATION (BUYER)

| | | |
|---|---|---|
| **Company Name:** | Goode Realty LLC | |
| **Company Address:** | 24039 Perdido Beach Blvd | |
| | Orange Beach, AL  36561 | |
| **Broker Officer:** | | |
| **Broker Officer License:** | | **Officer Email:** |
| **Agent Name:** | Brenda McDonald | |
| **Agent License:** | | |
| **Agent Email:** | brendakmcdonald@att.biz | |
| **Agent Cell:** | (251) 752-0512 | |
| **Agent Work:** | | |
| **Agent Fax:** | | |

## REAL ESTATE BROKER INFORMATION (SELLER)

| | |
|---|---|
| **Company Name:** | DR Horton, Inc. - Birmingham |
| **Company Address:** | 25366 Profit Dr |
| | Daphne, AL  36526 |
| **Company License:** | _____ |
| **Agent Name:** | Michele M Murdock |
| **Agent License:** | |
| **Agent Email:** | MMMurdock@drhorton.com |
| **Agent Cell:** | (251) 609-3556 |
| **Agent Work:** | |

## SELLER INFORMATION

| | |
|---|---|
| **Name:** | DR Horton, Inc. - Birmingham |
| **Address:** | 25366 Profit Dr |
| | Daphne, AL  36526 |

## SETTLEMENT AGENT INFORMATION

| | |
|---|---|
| **Company Name:** | DHI TILE |
| **Company Address:** | 25366 Profitt dr |
| | DAPHNE, AL  36526 |
| **Agent Name:** | BURNS, CATHY |
| **Agent Email:** | CDBurns@dhititle.com |
| **Agent Cell:** | |
| **Agent Work:** | |
| **Agent Fax:** | |

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643    5 TROON DRIVE, **Sales Rep:** Michele M Murdock    **Job:** 224650079

**Printed:** 5/26/2018



**ADDENDUM 4**
**CO-BROKER ADDENDUM**

| | |
|---|---|
| Seller: | **DR Horton, Inc. - Birmingham** |
| Purchaser(s): | **Ricky W. Ramey and Ronnie Lane Ramey** |
| Property: | **15646 TROON DRIVE, FOLEY, AL  36535** |
| | Lot **79**, Block/Phase , **Woodmont** Subdivision |
| Real Estate Agency: | **Goode Realty LLC** |
| Sales Agent: | **Brenda McDonald** |
| Real Estate Broker: | |
| Agency Address: | **24039 Perdido Beach Blvd, Orange Beach, AL  36561, US** |

This Co-Broker Addendum ("Addendum") is being provided pursuant to the Home Purchase Agreement ("Agreement") by and between Seller and Purchaser, for the purchase and sale of the above-referenced Property. Capitalized terms not otherwise defined herein shall have the same means as ascribed to them in the Agreement. If any term or condition of this Addendum conflicts with any term or condition of the Agreement, the terms and conditions of this Addendum shall prevail.

1. **Commission**.  Purchaser hereby identifies and designates the above named Sales Agent, Real Estate Broker and Real Estate Agency, collectively, as "Co-Broker," as provided in Section 10 of the Agreement. Subject to the terms and provisions of the Agreement and this Addendum, and provided that Closing actually occurs, Co-Broker will receive a real estate sales commission at Closing in the amount of  **3.00%** of the Purchase Price (the "Commission"). For the purposes of this Addendum, the term "Commission" is intended to include all commissions, incentives and bonuses, if any, to be received by Co-Broker in connection with the purchase and sale of the Property pursuant to the Agreement. No commission of any kind shall be earned or due unless and until Closing occurs. Co-broker's Commission shall be subject to limitations, if any, on total broker commission imposed by Purchaser's lender. The Commission must be paid at Closing and must be shown on the closing disclosure.

2. **Bonus Commission**.  The subsection checked below shall apply:

   ⊗ No bonus commission shall be due or paid.

   **OR**

   ⭕ If Closing occurs on or before , then, at Closing, the Co-Broker shall be paid an additional, bonus commission in the amount specified in the sub-subsection checked below:

   ☐      **$0.00**

   **OR**

   ☐      % of the Purchase Price stated in Section 2 of the Agreement as of the Effective Date.

3. **Commission Sharing Certification**.  With regard to the Commission, Co-Broker hereby acknowledges and certifies that it (*check a or b*):

   a. ⊗ **WILL NOT pay to Purchaser all or any part of the Commission at Closing.** Co-Broker acknowledges and agrees that no payment by Co-Broker or any other party of any portion of the Commission will be made directly to, or indirectly on behalf of, Purchaser or any other interested and/or related party, and that no part of the Commission will be used to pay Purchaser costs associated with the purchase and sale of the Property. In the event that Co-Broker decides at a later date to pay any portion of the Commission to Purchaser, Co-Broker agrees to execute an amendment to the Agreement to disclose the terms of such shared commission in order to create transparency with regard to how such shared commission applies to the purchase and sale of the above-referenced Property.

        OR

   b. ⭕ **WILL pay to Purchaser all or part of the Commission (such payment being referred to hereinafter as the "Shared Commission") at Closing**. Pursuant to a separate agreement between Co-Broker and Purchaser, Co-Broker has agreed to pay to Purchaser a portion of the Commission in an amount equal to (*check ONE*): ☐ **$0.00 OR** ☐ % (the "Shared Commission").

      i. Co-Broker certifies that the Shared Commission will be paid to Purchaser at Closing and shown on the Closing Disclosure as a credit to Purchaser. If the Purchaser obtains a mortgage loan, the Shared Commission will be applied towards Purchaser's closing costs and prepaids, as allowable by Purchaser's lender (if applicable).

      ii. Co-Broker hereby certifies that no portion of the Commission will be paid to Purchaser, directly or indirectly, or on behalf of Purchaser or any other interested and/or related party, outside of Closing.

      iii. Purchaser acknowledges that, if the Purchaser plans to obtain financing, Purchaser's lender may treat the Shared Commission as a "sales concession" and that such treatment may affect the loan-to-value ratio for financing purposes, requiring additional funds to be brought to Closing by Purchaser.

      iv. Purchaser and Co-Broker acknowledge and agree that the Shared Commission is solely between Co-Broker and Purchaser, and Seller has no liability or obligation to Purchaser with respect to payment of any portion of the Shared Commission. Purchaser is solely responsible for complying with any requirements of the agreement between Co-Broker and Purchaser in order to qualify for payment of the Shared Commission. Purchaser hereby fully waives and releases Seller from any and all claims Purchaser may have against Seller arising from or relating to the Shared Commission or payment of same.

4. Co-Broker recognizes that Seller is relying on the certification set forth in Section 3 above as verification of whether any payment of any portion of the Commission to Purchaser is to be made.

5.    The undersigned Sales Agent (or other person signing on behalf of Co-Broker) represents and warrants that he or she has the requisite authority to bind Co-Broker, including the above-named Real Estate Broker and Real Estate Agency as to all matters addressed in this Addendum and to modify any existing commission agreement with respect to the Agreement and under which Co-Broker may be entitled to receive a commission.

**PURCHASER:**

*Ricky W. Ramey*
2AD02AB4328C43C...

_____    5/28/2018
**Buyer:** Ricky W. Ramey    Date

*Ronnie Lane Ramey*
723E785867F9414...

_____    5/28/2018
**Co-Buyer:** Ronnie Lane Ramey    Date

**CO-BROKER:**

*Brenda McDonald*
44686EC0A03F4CD...

_____    5/28/2018
**Broker Agent:** Brenda McDonald    Date

**SELLER:**

**DR Horton, Inc. - Birmingham**

*William C Moody*
BB0850F2BB174DD...

_____    5/29/2018
William C Moody    Date

Officer, D.R. Horton

*For Internal Purposes Only*
**SELLER SALES REP:**

*Michele M Murdock*
1B5FCB9A28E6439...

_____    5/26/2018
**Sales Rep:** Michele M Murdock    Date

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643     15646 TROON DRIVE, **Sales Rep:** Michele M Murdock     **Job: 224650079**

**Printed:** 5/26/2018

# ADDENDUM
## DISCLOSURE AND ACKNOWLEDGEMENT REGARDING
## WOODMONT SUBDIVISION

This **ADDENDUM** is attached to and made a part of that HOME PURCHASE AGREEMENT (the "Agreement") between D. R. Horton, Inc. - Birmingham, as Seller, and **Ricky W. Ramey and Ronnie Lane Ramey**, as Buyer, regarding that parcel of real estate located in Baldwin County, Alabama (the "County"), briefly described as Lot **0079**, on the plat of Woodmont Subdivision, as recorded at Slides 2334-F, 2336-A, and 2393-D (the "Plats") in the records of the Office of the Judge of Probate of Baldwin County, Alabama (the "Recording Office") and referred to in the Agreement as the "Lot" or "Property". All terms defined in the Agreement shall have the same meanings when used in this Addendum. Notwithstanding any other provision of the Agreement, Seller and Buyer agree as follows:

1.  In the event of a conflict between the terms and provisions of the Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

2.  Seller has disclosed to Buyer and Buyer acknowledges the following:

       a.      Seller is not the developer of Woodmont Subdivision (the "Subdivision"), and Seller is not responsible or obligated to Buyer or to any other party for any part of the development of the Subdivision.

       b.      A certain Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions of Woodmont Subdivision dated August 17, 2006, and recorded at Instrument Number 1062621 in the Recording Office, and re-recorded at Instrument Number 1310645 in the Recording Office, and a certain Amended Restrictive Covenants of Woodmont dated January 24, 2012, and recorded at Instrument Number 1322739 in the Recording Office Book (collectively, the "Declaration"), all purport to encumber property known as "Woodmont". For various reasons, the Declaration may be enforceable as against some, but not all, of the lots within the Subdivision. In such an event, those lots that are subject to the Declaration would have to abide by the covenants of the Declaration pertaining to, among other matters, the size and/or appearance of homes constructed upon any lot, the use and appearance of lots, and/or payment of any assessments to a homeowners association, while those lots that are not subject to the Declaration would **NOT** have to abide by the covenants of the Declaration.

       c.      Articles of Incorporation of Woodmont Property Owners Association, Inc. (the "HOA") were recorded at Instrument 130991 in the Office of the Judge of Probate of Baldwin County, Alabama (the "Articles"). The Articles include as members of the HOA only the owners of lots within Phase 1 of the Subdivision. Thus, owners of lots within Phase 2 of the Subdivision may not be members of the HOA. In such an event, among other things, owners of lots within Phase 2 of the Subdivision might not have any (i) right to make use of the common areas located within the Subdivision, (ii) obligation for common expense assessments made by the HOA, and (iii) right to participant in the governance of the HOA.

       d.      The common areas in the Subdivision are not owned by the HOA (the "Common Areas"). Thus, the lot owners in the Subdivision may not have any right to use, occupy, enjoy or otherwise be benefitted by the Common Areas.

3.  Except as stated in this Addendum, Seller, its agents and employees, have not made and do not make any warranties, representations, promises or statements of any kind, whether written or oral, express or implied, with regard to the matters set forth in Section 2 (the "Disclosed Matters"). In addition, Buyer acknowledges that Seller has no duty to update, and will not update, this Addendum or the information contained in this Addendum.

4.  **GENERAL RELEASE. BUYER AND BUYER'S HEIRS, SUCCESSORS, ASSIGNS AND LEGAL REPRESENTATIVES (THE "BUYER PARTIES") HEREBY RELEASE SELLER, ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, PARENT, SUBSIDIARIES, AFFILIATES, SUBCONTRACTORS, SUPPLIERS, HEIRS, PERSONAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS (THE "SELLER PARTIES"), WITH RESPECT TO ANY CLAIMS, DEMANDS OR DAMAGES THAT THE BUYER PARTIES MAY HAVE THAT ARE IN ANY WAY RELATED TO THE DISCLOSED MATTERS AND WHICH MAY IMPACT ONE OR MORE LOTS. IT IS THE SPECIFIC INTENT OF THE BUYER PARTIES TO FULLY**

**RELEASE AND DISCHARGE THE SELLER PARTIES FROM ANY AND ALL LIABILITY RELATED TO THE EXISTENCE OF THE DISCLOSED MATTERS.**

**IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATES SHOWN BELOW.**

| Purchaser: | Seller: |
|---|---|
| | **DR Horton, Inc. - Birmingham** |
| *Ricky W. Ramey*  2AD02AB4328C43C...    5/28/2018 | *William C Moody*  BB0850F2BB174DD...    5/29/2018 |
| _____  _____ | _____  _____ |
| **Buyer:** Ricky W. Ramey    Date | william C Moody    Date |
| *Ronnie Lane Ramey*  723E785867F9414...    5/28/2018 | Officer, D.R. Horton |
| _____  _____ | |
| **Co-Buyer:** Ronnie Lane Ramey    Date | |

2058579_3

DocuSign Envelope ID: 4FF625FE-1B4D-423E-9908-4128C8429643

**Buyer(s):** Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Lot:** 79, **Address:** 13043 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Job:** 224650079

Printed: 5/26/2018



**ADDENDUM**
**WETLANDS ADDENDUM**
**WOODMONT PHASE 2– LOTS 79 & 80 ONLY**

This **ADDENDUM** is attached to and made a part of that Home Purchase Agreement between **DR Horton, Inc. - Birmingham**, as Seller, and **Ricky W. Ramey and Ronnie Lane Ramey** as Purchaser (the "Purchase Agreement"), regarding that parcel of real estate located in **Baldwin** County, **Alabama**, briefly described as Lot **0079**, Phase **2**, **Woodmont** (the "Community"), and referred to in the Purchase Agreement as the "Lot." All terms defined in the main text of the Agreement shall have the same meanings when used in this Addendum. Seller has disclosed to Purchaser and Purchaser acknowledges the following:

1.      In the event of a conflict between the terms and provisions of this Addendum and any other terms or provisions of the Agreement, this Addendum shall control as to all matters in this Addendum.

2.      Seller has disclosed to Purchaser and Purchaser understands and acknowledges the following regarding the Property and the Subdivision (the "Disclosed Matters"):

   a.      Seller is not the developer of the Subdivision and is not responsible or obligated to Purchaser or to any other party for any part of the developer's activities, including any buffers, setbacks, impacts or encroachments throughout the Subdivision which may affect the Property.

   b.      The Subdivision contains wetlands and/or wetland buffers, including jurisdictional wetlands, which encumber specific lots as shown on Subdivision Plat of Woodmont, Phase 2, recorded at Instrument No. 1121637, Slide 0002393-D, in the public records of Baldwin County, Alabama (the "Plat"). Wetlands and wetland buffers are natural resources protected by federal, state, and/or local law and regulated by the U.S. Army Corps of Engineers (the "ACOE") and/or other applicable federal, state or local authorities having jurisdiction over the Subdivision.

   c.      Except as may be otherwise expressly granted by written approval from the applicable governmental authorities, activities on or use of the wetlands and/or wetland buffers, wherever located in the Subdivision, may be limited or altogether prohibited.

   d.      Seller cannot assure Purchaser that the location of any wetlands and/or wetland buffers will not be changed in the future.

   e.      For Lots 79 and 80 in the Subdivision: Lots 79 and 80 are encumbered by wetlands as shown on the Plat. Purchaser understands that its purchase of the Property is subject to this encumbrance.

      **Purchaser(s) Initials: _____**; (if Purchaser is purchasing Lot 79 or 80 identified in this paragraph 2.e.).

   f.      More information about the wetlands and/or wetland buffers may be found: (i) by accessing the website of the ACOE Mobile District, at http://www.sam.usace.army.mil/Missions/Regulatory/Wetlands.aspx or by contacting the ACOE Mobile District directly at (251) 690-2658; (ii) by accessing the U.S. Environmental Protection Agency (the "EPA") website, at http://water.epa.gov/type/wetlands/index.cfm or by contacting the EPA directly at (202) 272 - 0167; and/or (iii) by reviewing the Plat.

3.      Except as stated in this Addendum or in the Agreement, Seller, its parent, subsidiaries and affiliates and each of their respective officers, directors, employees, agents, heirs, personal representatives, successors, and assigns (the "Seller Parties"), have not made and do not make any warranties, representations, promises or statements of any kind, whether written or oral, express or implied, with regard to the Disclosed Matters, wetlands and/or wetland buffers, the location, extent, scope or characteristics of the wetlands and/or wetland buffers, or any environmental conditions or potential environmental effects associated with any of the same.

4.      THE DISCLOSED MATTERS MAY ADVERSELY AFFECT (I) THE VALUE OF THE PROPERTY, AND/OR (II) THE USE, ENJOYMENT, AND/OR OWNERSHIP OF THE PROPERTY BY PURCHASER AND/OR PURCHASER'S HEIRS, SUCCESSORS, INVITEES, LICENSEES, ASSIGNS AND LEGAL REPRESENTATIVES (THE "PURCHASER PARTIES").

5.      Purchaser acknowledges that this Addendum (i) is not intended to, and does not, constitute a full disclosure of all conditions that might affect the Property or the Subdivision, and (ii) does not relieve Purchaser from its obligations to investigate the Property and the Subdivision to satisfy itself that the Property and the Subdivision are satisfactory to Purchaser. In addition, Purchaser acknowledges that Seller has no duty to update, and will not update, this Addendum or the information contained in this Addendum (including, without limitation, any references to the websites or telephone numbers set forth above in Paragraph 2.f.).

6.      THE PURCHASER PARTIES HEREBY RELEASE THE SELLER PARTIES FROM ANY AND ALL CLAIMS, DEMANDS, LOSSES, COSTS, INJURIES OR DAMAGES, KNOWN OR UNKNOWN, THAT THE PURCHASER PARTIES MAY HAVE, AT ANY TIME, THAT ARE IN ANY WAY RELATED TO, CONNECTED WITH, OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THE DISCLOSED MATTERS OR THEIR EFFECTS, PRESENT OR FUTURE, ON THE HEALTH OR SAFETY OF THE PURCHASER PARTIES, THE PROPERTY OR ANY OTHER AREAS WITHIN OR AROUND THE SUBDIVISION. IT IS THE SPECIFIC INTENT OF THE PURCHASER PARTIES TO FULLY RELEASE AND DISCHARGE EACH AND ALL OF THE SELLER PARTIES FROM ANY AND ALL LIABILITY RELATED TO THE DISCLOSED MATTERS.

**IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATES SHOWN BELOW.**

Buyer: Ricky W. Ramey and Ronnie Lane Ramey, **Community:** Woodmont, **Plat:** 7377, **Address:** 13043 TROON DRIVE, **Sales Rep:** Michele M Murdock

**Purchaser:**

DocuSigned by:

*Ricky W. Ramey*

2AD02AB4328C43C...

_____  5/28/2018

**Buyer:** Ricky W. Ramey          Date

DocuSigned by:

*Ronnie Lane Ramey*

723E785867F9414...

_____  5/28/2018

**Co-Buyer:** Ronnie Lane Ramey     Date

**Seller:**
**DR Horton, Inc. - Birmingham**

DocuSigned by:

*William C Moody*

BB0850F2BB174DD...

_____  5/29/2018

William C Moody                Date

Officer, D.R. Horton

# EXHIBIT B

# WARRANTY

Purchaser has been provided a Warranty book and has read and understands the Ten Year Limited Warranty administered by Residential Warranty Corporation ("RWC"). Validation of the Warranty is conditioned upon Seller's compliance with all RWC's enrollment procedures and upon Seller remaining in good standing in the RWC program. Purchaser understands and agrees that if this Warranty is validated, it is provided by the Seller in lieu of all other warranties, verbal agreements or representations; and Seller makes no warranty, express or implied, as to quality, fitness for a particular purpose, merchantability, habitability or otherwise, except as is expressly set forth in the Program. Purchaser understands and agrees that the warranties of all appliances and other consumer products installed in the home are those of the manufacturer or supplier and same are assigned to Purchaser effective on the date of closing. In any event, Seller shall not be liable for any personal injury or other consequential or secondary damages and/or losses which may arise from or out of any and all defects. Except for purchasers of FHA or VA financed homes, Purchaser acknowledges and understands that the Warranty includes a provision requiring all disputes that arise under the warranty to be submitted to binding arbitration.

July 6, 2018

Ricky W Ramey

Ronnie Lane Ramey