IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL MORTON, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 22-00091-JB-N |
| **D. R. HORTON, et al,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion to Remand (Doc. 28), Defendant Bethel Engineering, Inc.'s Opposition to Plaintiffs' Motion to Remand (Doc. 37), and Plaintiffs' Reply. (Doc. 38). The Court held a hearing on this matter on June 1, 2022. (Doc. 40). The Motion is ripe for disposition.

**I.    Background and Procedural History**

This action was brought by three separate groups of plaintiffs in the Circuit Court of Baldwin County, Alabama: 1) Michael Morton and 87 additional Plaintiffs filed a civil action against D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham, and Bethel Engineering, Inc. ("the *Morton* action") on November 9, 2021 (Doc. 1-1); 2) Sara Fahrmann, individually, and the Estate of Patrick Fahrmann, filed a civil action against D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham, and Bethel Engineering, Inc., and the City of Orange Beach, Alabama ("the *Fahrmann* action") on January 14, 2022 (Doc. 1-05); and, 3) Penny McAnally and 70 additional Plaintiffs filed a civil action against D.R. Horton, Inc., D.R. Horton, Inc.-Birmingham, and Bethel Engineering, Inc. ("the *McAnally* action") on January 21, 2022. (Doc. 1-06). The complaints assert as many as twelve

state-law claims sounding in theories of negligence, wantonness, nuisance, negligent hiring, wrongful death, and fraud, or, in the alternative, violations of the Alabama Deceptive Trade Practices, Ala. Code § 8-19-1, et. seq.

Plaintiffs allege homebuilders D.R. Horton, Inc. ("Horton") and D.R. Horton, Inc.-Birmingham ("Horton-Birmingham") conspired with Bethel Engineering, Inc. ("Bethel") (also, collectively, hereinafter, "Defendants")[1] to misrepresent to Plaintiffs the houses they bought in Baldwin County, Alabama, were constructed to meet the Gold Fortified standard, as described in the "Institute for Business and Home Safety (IBHS) Fortified Home Technical Home Requirements." (Doc. 1-1 at ¶ 13).[2] Plaintiffs allege Defendants provided them with a certificate that the houses they purchased would meet the Gold Fortified standard; however, the houses do not meet the Gold Fortified standard. (Doc. 1-1 at ¶¶ 14-16). Plaintiffs also allege the construction techniques employed violate numerous municipal and county building codes. (Doc. 1-1 at ¶ 16). Plaintiffs contend that these misrepresentations and violations have resulted in the diminution of their property value, and this economic injury is compounded by the fact that Horton holds the mortgage on the house which is greater than the current value of the property. (*Id.* at ¶ 18). Plaintiffs seek compensatory damages for diminution in value of their real properties, mental anguish and emotional distress, as well as punitive damages and injunctive relief. (Doc. 1-1).

---

[1] The City of Orange Beach ("Orange Beach") is also named as a Defendant in the *Fahrmann* action in Counts 9-12. Theses counts (*i.e.,* the *Fahrmann* wrongful death claims), along with *McNally* personal injury claims, are due to be severed and remanded back to Baldwin County Circuit Court. For this reason, the Court will not consider Orange Beach when undertaking the analysis of the local controversy or home state exception to CAFA.

[2] This consolidated action concerns three separate complaints filed in Baldwin County Circuit Court. The complaints are substantively similar, and there are no differences which affect the Court's analysis here. For ease of reference, only the *Morton* complaint will be cited.

The three separate lawsuits were consolidated into the *Morton* action by the Baldwin County Circuit Court on February 8, 2022. (Doc. 28-9). On February 28, 2022, Bethel filed a Notice of Removal (Doc. 1). In its Notice, Bethel invoked this Court's jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d). (*Id*.). Upon consolidation, the *Morton* action included over 100 Plaintiffs, which triggered Defendant Bethel's right to remove under CAFA. "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Adams v. Int'l Paper Co.*, 2017 U.S. Dist. LEXIS 71693, *18 (S.D. Ala. May 5, 2017) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 552 (2014); *see also South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (similar).[3] In an action removed pursuant to CAFA, the "Eleventh Circuit has opined that 'the defendants bear the burden of demonstrating that the parties are properly in federal court.'" *Id.* (citing *Life of the South Ins. Co. v. Carzell,* 851 F.3d 1341, 1344 (11th Cir. 2017)).

In its Notice of Removal, Bethel posited the consolidated action was properly removable because it now satisfied the mass action requirements under CAFA pursuant to 28 U.S.C. § 1332(d)(11)[4], the minimal diversity requirement, and the matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs. (Doc. 1). Plaintiffs filed a Motion to Remand on March 30, 2022 (Doc. 28), contending this matter is due to be remanded on three

---

[3] "Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. ... CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications." *Blevins v. Aksu*t, 849 F.3d 1016, 1019 (11th Cir. 2017) (citations omitted).

[4] A mass action is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." 28 U.S.C. § 1332(d)(11)(B)(i). *Spencer v. Specialty Foundry Prods.*, 524 F. Supp. 3d 1212, 1214 (N.D. Ala. March 3, 2021).

grounds:  1) removal by Bethel was untimely; 2) remand is required under the "local controversy" exception to CAFA (28 U.S.C. § 1332(d)(4)(A)); and 3) remand is required under the "home state" exception to CAFA (28 U.S.C. § 1332(d)(4)(B)).  (Doc. 28).  The Court held a hearing on June 1, 2022.  At the hearing, Plaintiffs conceded Bethel's removal was timely and did not dispute that this action is properly before this Court under CAFA.  Accordingly, the only issue before the Court is whether the local controversy or the home state exception to CAFA requires the Court to decline to exercise its jurisdiction.

**II.   Analysis**

"A federal court must exercise jurisdiction over a qualifying mass action unless 'the local controversy exception or the home state exception applies,' requiring remand to state court." *Spencer v. Specialty Foundry* Products.  524 F. Supp. 3d 1212, 1214 (N.D. Ala. March 3, 2021) (citing *Hunter v. City of Montgomery, Ala.*, 859 F.3d 1329, 1335 (11th Cir. 2017); *see also* 28 U.S.C. § 1332(d)(2), (11)).  Plaintiffs bear the burden of proving their action falls within one of these exceptions. *See Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1165 (11th Cir. 2006) ("Plaintiffs, as the parties objecting to removal under CAFA, have the burden of proving either the local controversy exception or home state exception applies").  "'[T]he local controversy is a narrow exception, 'with all doubts resolved in favor of exercising jurisdiction over the case.'" *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1159 (11th Cir. 2021) (quoting *Evans*, 449 F.3d at 1163).

Bethel contends Plaintiffs have not met their burden "of proving the evidence necessary to support their legal theories on each [exception] and have failed to present evidence to this Court to support their contentions on remand." (Doc. 37).  Indeed, according to Bethel, "[t]o the extent that the submissions by the Plaintiffs provide any reliable or credible evidence, the

submissions prove that the exceptions to federal jurisdiction would not apply to this case." (*Id.*). The Court agrees.

### A.   The Local Controversy Exception

First, Plaintiffs argue the Court should decline to exercise its jurisdiction under the local controversy exception to CAFA. "The local controversy exception is designed to ensure that state courts hear cases of a truly local nature." *Evans*, 449 F.3d at 1166. CAFA's local controversy exception provides:

> (4) A district court shall decline to exercise jurisdiction. . .
> (A)(i)over class actions in which:
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> > (II) at least 1 defendant is a defendant—
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > > (cc) who is a citizen of the State in which the action was originally filed; and
> > (III) principal injuries resulting from the alleged conduct, or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d)(4)(A). Class action plaintiffs must demonstrate to the court that their dispute falls within CAFA's local controversy exception. *See Evans*, 449 F.3d at 1164. ("The district court correctly determined that the plaintiffs bear the burden of establishing that they fall within CAFA's local controversy exception.").

In this instance, Plaintiffs carry their burden on two elements of the local controversy exception. First, the alleged conduct, which concerns the construction of residential property

5

located in Baldwin County, Alabama, necessarily occurred in Alabama, the state where the action was filed.  (Docs. 28, 28-1-3 and 28-10).  Second, Plaintiffs assert, and Bethel does not dispute, that no other class actions have been filed in the preceding three-year period.  (Doc. 28).  However, Bethel does dispute whether Plaintiffs have carried their burden to demonstrate 1) more than two-thirds of Plaintiffs are citizens of Alabama as required by 28 U.S.C. § 1332(d)(4)(A)(i); and, 2) a state of Alabama defendant (here, either Bethel or Horton-Birmingham) is the "significant defendant" as required by 28 U.S.C. § 1332(d)(4)(A)(ii).  (Doc. 37).

### 1)   Citizens of the State of Alabama

To establish the application of the "local controversy exception," Plaintiffs must demonstrate that at least two-thirds of the class are citizens of the State of Alabama.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I).[5]  The Eleventh Circuit has explained a person is a citizen of the state in which he is "domiciled."  *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction.") (citing *Hendry v. Masonite Corp.,* 455 F.2d 955, 955 (5th Cir.1972)).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom....'"  *Id.* at 1257-58 (quoting *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.1974), cert. denied, 419 U.S. 842 (1974) (quoting *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954)).  Therefore, to establish citizenship for purposes analyzing whether Plaintiffs meet the first requirement of local controversy exception, Plaintiffs must "provide evidence of the class members' state of residence as well as evidence showing their intent to

---

[5] This requirement is also necessary under the "home state exception." *See* 28 U.S.C. § 1332(d)(4)(B)(i)(I) and discussion, *infra*.

remain in that state." *Smith*, 991 F.3d at 1157. "[C]ourts look to various factors in determining a person's intent to remain in a state, including property or business ownership, where the plaintiffs pay taxes and are registered to vote, and sworn statements of intent to remain. All of these forms of evidence relate directly to the parties asserting citizenship." *Id.* In *Smith*, the Eleventh Circuit overturned the district court's remand under CAFA's local controversy and discretionary exceptions where the plaintiffs did not produce any evidence relating directly to each plaintiff's intent to remain in Florida, such as declarations, property records, or tax records. *Id.* at 1148.

As support for their assertion that more than two-thirds of the Plaintiffs are residents of the state of Alabama with an intent to remain, Plaintiffs direct the Court to the following: 1) a list of addresses included as an exhibit to each complaint (*see*, e,g, Doc. 28-1-3); 2) an affidavit from Plaintiffs' counsel, attached as an exhibit to the Motion to Remand, attesting to his efforts to determine that the Plaintiffs resided at the addresses they provided (Doc. 28-10); and 3) the home purchase agreements (and, the corresponding Baldwin County addresses) between certain Plaintiffs and D.R. Horton-Birmingham.[6] (Docs. 32-1-92). Bethel argues these documents do not carry Plaintiffs' burden to demonstrate either an individual Plaintiff's residency or his intent to remain. (Doc. 37). Bethel points out, correctly, that while each complaint includes, as an exhibit, a list of addresses, the addresses are not linked to a particular Plaintiff. (*Id*.). Further, Plaintiffs "offer no evidence of any employment, business ownership, bank account location, homestead exemption status, tax payments, voter registration or any affidavit from any individual Plaintiff

---

[6] The purchase agreements were attached in support of D.R. Horton-Birmingham's Motion to Compel Arbitration. (Doc. 32).

expressing their intent to remain in Alabama" as required by the Eleventh Circuit in *Smith*. (*Id*). Finally, Bethel contends the affidavit submitted by Plaintiffs' counsel is "nothing other than the conclusory allegations" of Plaintiffs' counsel, lacking any detail as to what materials Plaintiffs' counsel reviewed in order to conclude that "over two-thirds of the Plaintiffs actually reside in the homes…". (Doc. 37) (citing Doc. 28-10, pp. 1,2).

At the hearing, Plaintiffs' counsel expanded on his efforts to determine the domicile of each Plaintiff and how he reached the conclusion that more than two-thirds of the Plaintiffs reside in the homes made the subject of the complaints. The investigation (by Plaintiffs' counsel) concluded only one Plaintiff does not live at the subject house. (Doc. 28-10). While the Court finds the explanation by Plaintiffs' counsel helpful, it raises the question of whether an affidavit of counsel can suffice as evidence, as the Eleventh Circuit intended, of a Plaintiffs' domicile status and his intent to remain.[7]

The Court notes, given the nature of this case, it is more likely than not two-thirds of the Plaintiffs reside, with the intent to remain in the house they bought in Baldwin County, Alabama, which was constructed by the Defendants. However, without more concrete evidence on the subject (homestead exemption records, for example), this likelihood is only "sensible guesswork." *See Smith*, 991 F.3d at 1158-1159 ("We cannot rely only on a series of purportedly reasonable inferences to determine citizenship; we cannot base our determination of citizenship

---

[7] This issue was discussed briefly in *Evans*, where the Eleventh Circuit found that that an affidavit submitted by the attorney of record in order to prove that at least two-thirds of the plaintiff class are Alabama citizens amounted to "little proof" of that fact. See *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) ("In light of our resolution of this case, we need not reach issues relating to the admissibility of the evidence contained in the affidavits of the several attorneys participating in this case. The court's concerns in this regard were sufficiently expressed at oral argument.").

8

on 'sensible guesswork.'") (quoting *In re Sprint Nextel Corp.,* 593 F.3d 669, 674 (7th Cir. 2010)) ("All in all, we're inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens. . . . But that's all guesswork. Sensible guesswork, based on how the world works, but guesswork nonetheless.")). As the Seventh Circuit determined in *Sprint*, and the Eleventh Circuit in *Smith*, this Court declines to conclude more than two-thirds of the Plaintiffs reside in Baldwin County, Alabama, based on the record before it.

### 2)    The Significant Defendant Test

Moreover, Plaintiffs have failed to demonstrate whether a local defendant, here, Defendant Horton-Birmingham or Bethel, is the "significant defendant," as required by the second prong of the local controversy exception. *See* 28 U.S.C. § 1332(d)(4)(A)(II). CAFA defines a "significant defendant" as one "from whom significant relief is sought" and "whose conduct forms a significant basis for the claims asserted." *Evans*, 449 F.3d at 1166. Until recently, the issue of "[w]hether a class seeks significant relief from a particular defendant require[d] the court to consider (1) how many members of the class were harmed by the specific defendant's actions, (2) a comparison of relief sought between all defendants, and (3) each defendant's ability to pay the judgment." *Goostree v. Liberty Nat'l Life Ins. Co.*, 2019 U.S. Dist. LEXIS 124129, *21 (N.D. Ala. July 25, 2019) (relying on *Evans*, 449 F.3d at 1167 (citing *Robinson v. Cheetah Transp.*, 2006 U.S. Dist. LEXIS 10129 (W.D. La. Feb. 27, 2006) (modified by *Smith*, 991 F. 3d 1145)). To reach the conclusion that the relief plaintiffs seek from a local defendant is 'a significant portion of the entire relief sought by the class,' Plaintiffs may compare the relief sought from the local

defendant to that sought from the foreign defendants. *Lemy v. Direct Gen. Fin. Co.*, 559 F. Appx' 796, 798 (11th Cir. 2014) (citing *Evans*, 449 at 1164. [8]

In 2021, the Eleventh Circuit removed the third prong of the significant defendant test. The Eleventh Circuit explained, "[t]he significant defendant provision is unambiguous in its requirement that the defendant be one 'from whom significant relief is sought by members of the plaintiff class.'" *Smith,* 991 F.3d at 1161 (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)). "That requirement does not equate to a defendant from whom significant relief may be obtained." *Id.* (citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244-45 (10th Cir. 2009) ("'The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'")). Therefore, after *Smith*,

---

[8] *See* additional explanations from the Third Circuit:

> The plain text of this provision relates the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other. The provision does not require that the local defendant's alleged conduct form a basis of each claim asserted; it requires the alleged conduct to form a significant basis of all the claims asserted. While assessing the quantity of claims based on the local defendant's alleged conduct may be useful to the analysis, the significant basis provision does not establish an absolute quantitative requirement. Nor is it necessary to imply such a quantitative requirement to make sense of the provision, for a party's conduct may form a significant basis of an entire set of claims even if some claims within the set are not based on that conduct.
>
> In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants. Indeed, all the claims asserted by the Plaintiffs reflect the alleged conduct of all the Defendants. If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied. *Whether this condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants.*

*Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155-156 (3rd Cir. 2009) (emphasis added).

the significant defendant test requires Plaintiffs to demonstrate two things: 1) they seek significant relief from a local defendant and, 2) a local defendant's conduct forms a significant basis for the claims asserted. *See Evans*, 449 F.3d at 1166 (concluding "plaintiffs failed to prove either prong").

In their motion to remand, Plaintiffs assert all three of the Alabama-based defendants are "significant defendants" -- Horton-Birmingham, Bethel and the City of Orange Beach, Alabama. (Doc. 28). Plaintiffs point out the complaints did not distinguish as to damages and sought recovery for joint and severally liability against all Defendants. *Id*. Plaintiffs contend they do not have to demonstrate a significant local defendant when they are seeking and joint and several liability. Plaintiffs rely on *Smith* for this contention. As discussed, *Smith* overturned that portion of the significant defendant test which required a third showing that relief also be obtained from the local defendant. The Eleventh Circuit, in *Smith*, acknowledged the district court's conclusion the local defendant (Bokor) was a significant defendant relied on the joint and several liability allegations (against both the foreign and local defendant) and "the alleged scheme that contemplates each Defendant as equally culpable." *See Smith*, 991 F.3d at 1160. However, the local defendant (Bokor) did not dispute the district court's findings that he was a significant defendant; he only disputed his ability to pay the judgment, which the Eleventh Circuit then deemed unnecessary. *See Smith*, 991 F.3d at 1160. Accordingly, *Smith* does not stand for the proposition that class plaintiffs need not demonstrate a local defendant is the significant defendant when they allege joint and several liability.[9]

---

[9] The Eleventh Circuit reiterated the premise that joint and several allegations do not relieve class plaintiffs of their burden to demonstrate a local significant defendant more recently in *Lemy v. Direct Gen. Fin. Co.,* 559 Fed. Appx.

On the other hand, the Eleventh Circuit did discuss the impact of joint and several allegations on the significant defendant analysis in *Evans*. There, the Eleventh Circuit recognized a plaintiff may seek relief from one defendant for the conduct of another under Alabama's joint and several liability principles.[10] However, the court noted the plaintiff still must satisfy the requirement that the alleged conduct of the local defendant "forms a significant basis of the claims asserted by the proposed class." *Evans*, 449 F.3d at 1167. "In other words, the mere fact that relief might be sought against U.S. Pipe for the conduct of others (via joint liability) does not convert the conduct of others into conduct of U.S. Pipe so as to also satisfy the 'significant basis' requirement." *Evans*, 449 F.3d at FN7.

Accordingly, even though Plaintiffs allege joint and several liability on the part of the local defendants, Plaintiffs still bear the burden of demonstrating at least one local defendant's conduct forms a significant basis of the claims asserted as opposed to the foreign defendant. Arguing that all three local defendants are equally culpable does nothing to demonstrate that they are more culpable than the foreign defendant. (*See* Doc. 28 "the alleged scheme demonstrates that all parties are equally culpable"). Furthermore, although Plaintiffs may assert

---

796 (11th Cir. 2014). There, the complaint did not distinguish between the declaratory relief sought against the local as opposed to the foreign defendants. *Lemy*, 559 F. Appx' at 798. The Eleventh Circuit observed that because declaratory relief was sought from the local defendant does not forestall the conclusion that significant relief was also sought from the foreign defendants. *Id.* ("In this case, the district court concluded that 4.5 percent of the total relief sought against one of the local defendants was not significant as compared to the 80 percent sought against one of the foreign defendants. This conclusion is not error.).

[10] *See also Spencer v. Specialty Foundry Prods.*, 524 F. Supp. 3d 1212, 1219 (N.D. Ala. 2021) ("Alabama law adds a wrinkle to an assessment of the relief the plaintiffs seek from the defendants. Under Alabama law, even if Specialty were to prove to be more culpable than the other defendants, '[d]amages are not apportioned among joint tort-feasors in Alabama; instead, joint tort-feasors are jointly and severally liable for the entire amount of damages awarded.'") (quoting *Matkin v. Smith*, 643 So. 2d 949, 951 (Ala. 1994) (citing *Buchanan v. Collier*, 555 So. 2d 134 (Ala. 1989)).

12

all Defendants are equally culpable, Bethel responds they are not all significant Defendants, and their roles are not equivalent.

The Court need not address Bethel's concerns directly,[11] because Plaintiffs' contention that the local defendants are the significant defendants is undercut by the exhibits to their own motion to remand. Plaintiffs attached four affidavits to their motion to remand. (*See* Docs. 28-13-15, 17). Three of the four affidavits identify "D.R. Horton" as the party responsible for construction of various houses.[12] (*See* Docs. 28-13, 14 and 17). In addition to naming the foreign defendant, D.R. Horton, and not the local defendant, as the party responsible for the home construction, the inspections are not correlated to any specific properties owned by any one Plaintiff. For example, the first affidavit is from a home inspector who claims to have inspected "dozens of homes with custom showers built by D.R. Horton in Alabama, Florida and Mississippi." (Doc. 28-13). The affidavit does not discuss whether any of these homes are owned by any Plaintiff. The next two affidavits possess the same flaws. Plaintiffs attached an affidavit from a "field testing manager" in the southeast who inspected "five separate single family homes" constructed by D.R. Horton" in Foley, Alabama. (Doc. 28-14). These five homes are not identified as a home owned by a Plaintiff in this action. Again, "D.R. Horton" is the party identified as breaching the IBHS Gold Certification standards, not a named local defendant. Finally, the third affiant investigated houses in 28 subdivisions of properties built by D.R. Horton. (Doc. 28-17).

---

[11] Bethel filed the Notice of Removal and responded to the Motion to Remand.

[12] In addition to naming D.R. Horton as the responsible party in the affidavits, Plaintiffs also attached a "Notice of violations with respect to the Alabama Deceptive Trade Practices Act" as an exhibit to their Complaint. This notice was sent to Horton and Horton-Birmingham. The notice claims the homes were built by "D.R. Horton." Plaintiffs allege "at the time of the closing, all of these homeowners were assured they were purchasing a 'gold-fortified' home. Upon information and belief, this was marketed to each homeowner, and each homeowner does in fact have a gold fortified certificate. In reality, each of these homes are not gold fortified." *See* Doc. 1-1 at p. 27.

The affiant determined the properties were not "fully qualified as gold-standard fortified homes." (Doc. 28-17). While the affiant is prepared to testify, if called, regarding the construction of the residential homes evaluated in the subdivisions he identified, it is not clear that any of these Plaintiffs own a home in any of those 28 subdivisions. *Id.*

The fourth affidavit in support of Plaintiffs' Motion to Remand is from a senior engineer for a national consulting and testing firm. (Doc. 28-15). The affiant prepared several reports documenting "the investigation and findings related to the residential construction in various construction in various sub-divisions located within the State of Alabama." (*Id.*). This affiant does not discuss a single Defendant or Plaintiff in this action. (*Id.*). The Court is unsure of the purpose of this affidavit.

On reply, Plaintiffs position shifts. Plaintiffs argue the defendant who "clearly" meets the significant defendant test is Horton-Birmingham. (Doc. 38). As support for their new position, Plaintiffs point to an affidavit from D.R. Horton, which was attached to Bethel's Notice of Removal. (Doc. 37, citing Doc. 1-10). In the affidavit, D.R. Horton's counsel asserts the "nerve center" of its operations are in Arlington, Texas, no executive offices, or officers, are located in Alabama, and no senior management decisions are made in Alabama. (*Id*). Plaintiffs read this statement as support for their position that Horton-Birmingham made all of the decisions concerning the construction of Plaintiffs' homes.

The Court is not as convinced. To recap, Plaintiffs have accused D.R. Horton, Horton-Birmingham, and Bethel of fraudulently misrepresenting to 176 Plaintiffs that the houses they own within hurricane-prone Baldwin County were constructed to "gold fortified standards" as described by the IBHS. (Doc. 28-1). The purpose of employing fortified standards during

construction is to implement a number of "construction upgrades" that work together to protect the home from severe weather. *See* https://fortifiedhome.org/solutions/ (August 8, 2022) (*See also* https://ibhs.org/guidance/fortified-construction-standards/ ("FORTIFIED Standards go beyond typical building codes to deliver superior performance during severe weather (such as hurricanes, strong thunderstorms, and lower-level tornadoes.")). Plaintiffs have alleged the construction methods and materials employed at the houses did not result in the house achieving the gold fortification standard, despite documentation from D.R. Horton to the contrary. (Doc. 28-1). As a result of this fraudulent scheme, Plaintiffs allege, their property was overvalued at the time they purchased it from Horton-Birmingham with a D.R. Horton mortgage and they are now "underwater" on their property valuation. (*Id*.). Given these allegations, the Court is not convinced the language in the D.R. Horton affidavit demonstrates D.R. Hortons' lack of involvement in this scheme. On the contrary, the affidavit could be read to imply that any "senior management decisions" about when or where to employ the fortified standards were made in Texas.

Either way the affidavit is interpreted, Plaintiffs provided no facts in their motion to remand to assist the Court with the necessary "substantive analysis" to find local defendant, Horton-Birmingham, a "significant defendant." *See Kaufmann*, 561 F.3d at n.6. Moreover, the allegations of the Complaint, plead almost equally against all three defendants, hinders this analysis as well. On this record, the Court finds Plaintiffs have not met their burden of showing remand is appropriate under the "local controversy" exception to CAFA, as codified at 28 U.S.C. § 1332(d)(4)(A).

### B. The Home State Exception

For these same reasons, remand under the home state exception is not proper. The home state exception applies if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). As discussed above, Plaintiffs have not met their burden to demonstrate more than two-thirds of the class of Plaintiffs are citizens of Alabama.

Even if Plaintiffs could meet this burden, Plaintiffs must demonstrate Bethel and/or Horton-Birmingham are primary defendants. "CAFA does not define the term 'primary defendant' and that the language of the statute provides 'no contextual clues as to its meaning.'" *McAteer v. DCH Reg'l Med. Ctr.*, 2020 U.S. Dist. LEXIS 176, *9 (N.D. Ala. January 2, 2020) (quoting *Hunter*, 859 F.3d at 1335). In *Hunter*, the Eleventh Circuit adopted and employed the "potential monetary loss standard." 859 F.3d at 1336. This standard requires a district court to analyze, when monetary relief is sought, "'whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.'" *Hunter*, 859 F.3d at 1336 (quoting *Vodenichar*, 733 F.3d at 505-06); *see also McAteer v. DCH Reg'l Med. Ctr.*, 2020 U.S. Dist. LEXIS 176, *10 (N.D. Ala. January 2, 2020).

Plaintiffs do not allege that a particular local defendant would bear a substantial financial loss. Instead, Plaintiffs argue "[i]n review of the Complaints and accompanying affidavits (Exhibits 1, 2 and 3) it is clear that D.R. Horton, Inc. – Birmingham and Bethel [ ] are subject to the same, or more counts as any other party, and would thus be liable for all damages sought." (Doc. 28).

As a result, Plaintiffs contend the joint and several liability claims against local defendants Bethel and Horton-Birmingham demonstrate both fall within the definition of a primary defendant. (*Id.*).

Plaintiffs' assertion is accurate. The complaint alleges the same claims against all defendants, making no distinction between local and foreign defendants. To be clear, D.R. Horton (the foreign defendant) is identified in the same counts as Bethel and Horton-Birmingham. Furthermore, Plaintiffs have not alleged that any Defendant caused injury greater than another, or that any Defendant is more culpable than another. Therefore, Plaintiffs' assertions of joint and several liability, though against two home state defendants, do nothing to support the conclusion that D.R. Horton is not also a primary defendant who may incur a substantial loss if found liable. *See Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1138–39 (M.D. Ala. 2011) ("On the facts of this case, all Defendants are primary defendants no matter the test employed."); *Meiman v. Kenton County*, 2011 U.S. Dist. LEXIS 10251, *n.6 (E.D. Ky. February 2, 1011) ("Neither the parties nor the Court's research suggests that identifying one or more defendants as a primary defendant precludes the remaining defendants from also being primary defendants."); *see also* K*earns*, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. Nov. 21, 2005) (where there was "nothing in the pleadings to distinguish among the defendants," the court determined that both defendants were "potentially directly liable to the plaintiff class," and were both, therefore, "primary defendants.").

Accordingly, all Defendants qualify as "primary defendants" under § 1332(d)(4)(B). Because the "primary defendants" are not all citizens of the state of Alabama, Plaintiffs cannot establish that the § 1332(d)(4)(B) local controversy exception applies.

### III. Conclusion

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiffs' *Motion to Remand* (Doc. 28) is denied;
2. The following counts, which do not arise from the common set of facts forming the mass action, are severed and remanded back to state court:
    a. Counts XI and XII of the *McNally Action* (*see* Doc. 28-3); and,
    b. Counts IX-XII of the *Fahrmann Action* (*see* Doc. 28-2).

**DONE and ORDERED** this 17th day of August, 2022.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE