IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL MORTON, et al.,                    )
                                           )
                    Plaintiffs,            )
                                           )
v.                                         )   CIVIL ACTION NO. 22-00091-JB-N
                                           )
D. R. HORTON, et al,                       )
                                           )
                    Defendants.            )

**ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Arbitration as to Bethel Engineering, Inc. ("Bethel") (Doc. 134)[1] and supplement thereto (Doc. 135), Bethel's response (Doc. 139) and Plaintiffs' reply (Doc. 141).[2]  Additionally, before the Court is Bethel's Motion to Dismiss Second Amended Complaint (Doc. 111), Plaintiffs' response (Doc. 121), and Bethel's reply (Doc. 125).  A hearing on the motions was held on August 7, 2023.  After careful review of the relevant filings and the arguments presented at the hearing, Plaintiffs' Motion to Compel Arbitration (Doc. 134) is **DENIED** and Bethel Engineering's Motion to Dismiss (Doc. 111) is **GRANTED**.

I.      **Factual and Procedural Background**

This is a mass action lawsuit wherein Plaintiffs have asserted several claims against Defendants, D.R. Horton Inc., D. R. Horton Birmingham (collectively "D.R. Horton Defendants"),

---

[1] Although, Plaintiffs' motion also sought to compel D.R. Horton, Inc., that party has since agreed to arbitrate. Accordingly, Plaintiffs' motion remains pending only with respect to Bethel.
[2] The Court has additionally considered Plaintiffs' supplement to its reply (Doc. 157) and second supplemental reply (Doc. 163).

and Bethel Engineering (Doc. 103).  In sum, Plaintiffs are the owners of homes constructed by the

D.R. Horton Defendants which they allege were improperly constructed in various ways that

resulted in damages to Plaintiffs.  The following timeline is pertinent to Plaintiffs' Motion to

Compel Bethel to Arbitrate:

**November 9, 2021** -Plaintiffs filed three complaints against Bethel in the Circuit Court of Baldwin County, Alabama (Doc. 1-4).

**January 2022**- Plaintiffs filed two more complaints against Bethel (Doc. 1-5, and 1-6).

**January 26, 2022 -** Plaintiffs filed a Motion to Consolidate the original three cases (Doc. 1-3) which was granted.

**February 28, 2022** – Bethel removed the consolidated cases to this Court. (Doc. 1).

**March 30, 2022** – Plaintiffs filed a Motion to Remand (Doc. 28) which was denied on August 19, 2022.

**April 5, 2022**- D.R. Horton Birmingham filed a Motion to Compel Arbitration (Doc. 33).

**July 15, 2022**- Plaintiffs filed a response in opposition to the Motion to Compel Arbitration (Doc. 42).

**August 19, 2022**- Bethel filed a Motion to Dismiss Plaintiffs' Complaint (Doc. 47).

**November 30, 2022 through December 16, 2022**- Plaintiffs filed four Amended Complaints (Docs. 83, 84, 85, 91) in an effort to cure deficiencies with their pleading.

**January 9, 2023**- Plaintiffs withdrew their previous opposition to arbitration with D.R. Horton Birmingham and agreed to arbitration (Doc. 96).

**February 24, 2023**- This Court Ordered the Parties "to file a Joint Notice indicating which parties and claims will be subject to Arbitration and otherwise stayed". (Doc. 101).

**March 2, 2023**- Plaintiff filed a Second Amended Complaint (Doc. 103).

**March 24, 2023**- Plaintiff and the D.R. Horton Defendants filed a Joint Notice notifying the Court of which parties and claims were subject to arbitration.  Bethel was not included. (Doc. 107)

**March 31, 2023** – Bethel filed a Motion to Dismiss the Second Amended Complaint (Doc. 111).

**May 24, 2023**- This Court set Bethel's Motion to Dismiss for a hearing following full briefing.

**June 10, 2023**- Plaintiffs filed a Motion to Compel Arbitration as to Bethel.  (Docs. 134 and 135).

With respect to Bethel, in the operative Complaint Plaintiffs have asserted claims for Negligence (Count VII), Negligent Hiring, Training, and Supervision (Count VIII), and Wantonness (Count IX) resulting from the work performed on the homes by Bethel pursuant to contracts with the D.R. Horton Defendants.  (Doc. 103).  According to Plaintiffs, "Bethel Engineering, Inc., upon information and belief, is the engineering entity who approved plans, supervised the construction project with respect to Institute for Business and Homes Safety (IBHS) Fortified Home Technical Requirements, in an effort to have the home receive a Gold Fortified certificate pursuant to IBHS Fortified Technical Requirements."  (Doc. 103).  Plaintiffs allege the work performed by Bethel was negligent and/or wanton because the homes were not constructed as to receive the Gold Fortified designation and certificate.  (*Id*.).  According to Plaintiffs, Bethel owed them a duty to exercise reasonable care and breached that duty "by negligently certifying plans, supervising the construction project, submitting materials to IBHS for Gold Fortification certification, and/or inspecting the Plaintiffs homes to ensure the homes meet the requirements for Gold Fortified standards in accordance with the IBHS Fortified Home Technical Requirements." (Docs. 103 and 121).

3

## II.      Motion to Compel Arbitration

Plaintiffs seek to compel Bethel to arbitrate this action based on the arbitration agreements contained within the contracts between D.R. Horton. Inc. ("DRHI") and Bethel and D.R. Horton Birmingham ("DRHB") and Bethel.  (Doc. 134, generally).  Plaintiffs additionally contend that only the arbitrator, not this Court, has the authority to determine substantive arbitrability.  (*Id*.).  Bethel contends that Plaintiffs have waived their right to arbitrate this action or alternatively, that no arbitration agreement exists that could bind it to arbitration. (Doc. 139, generally).  The Court will address each argument in turn.

### A.      Waiver

In response to Bethel's assertion of waiver, Plaintiffs argue that no waiver of their right to arbitrate has occurred because Plaintiffs did not make "an intentional and knowing waiver and or relinquishment of their rights to seek arbitration other than litigation conduct or an opposition to arbitration against D.R Horton-Birmingham". (Doc. 141 at 2). The Court agrees with Plaintiffs' qualifying caveat of "other than litigation" but not with Plaintiffs' ultimate conclusion.

> Like any other right or obligation under a contract, an agreement to arbitrate may be waived. [*Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309], 1315 (11th Cir. 2002).  "A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right...." *Id*. quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (cleaned up), abrogated on other grounds by *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).

> There's no set rule as to what constitutes waiver of an arbitration agreement, so we review whether a waiver has occurred based on the facts of each case. *Burton–Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971). "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (cleaned up). "[T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." *Id*. "Acting in a manner inconsistent with one's arbitration rights and then changing course mid-

4

journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime." *Id.* "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the [d]istrict [c]ourt of a party's arbitration rights and its intent to exercise them." *Id.*

*Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, *2 (11th Cir. 2023).

As detailed herein above, the procedural nature of Plaintiffs' journey to the present motion was neither efficient nor unintentional.  Moreover, a review of the docket of this action can result in no conclusion except that Plaintiffs, from the very start, have attempted to litigate this action despite the known existence of arbitration agreements against certain defendants, when it suited them, then changed course when it did not, and now attempt to change course again.  Specifically, the docket reflects that Plaintiffs initially filed three separate lawsuits in the Circuit Court of Baldwin County, Alabama in November 2021. (Docs. 1-4) followed by two more in January 2022 (Docs. 1-5, 1-6).  Subsequently, the state court actions were consolidated and removed to this Court by Bethel over Plaintiff's opposition.  (Doc. 1 and Doc. 28).     In August 2022, Bethel moved to dismiss the original complaint (Doc. 47). Thereafter, over the course of more than a year and after multiple directives from this Court, Plaintiffs filed four more first amended complaints.  (Docs. 83, 84, 85, and 91).  Finally, in March 2023, Plaintiffs' Second Amended Complaint became the operative Complaint in this action.  (Doc. 103).  However, over the same time period that Plaintiffs were attempting to correct and amend their complaint, D.R. Horton Birmingham filed a motion to compel arbitration which Plaintiffs squarely opposed on the record. (Docs. 33 and 42).  In their opposition, Plaintiffs argued that the arbitration clause in the Home Purchase Agreements was not enforceable and/or should be void for public policy reasons. (*Id.*, generally).  Then, still during the time in which Plaintiffs were attempting to file one amended operative complaint, they suddenly switched course and withdrew their previous opposition to

arbitration and instead agreed that arbitration was appropriate.  (Doc. 96).  As a result, this Court ordered Plaintiffs and D.R. Horton Birmingham to file a joint notice detailing which claims and which parties were subject to arbitration, and which claims and parties would proceed in the instant litigation.  (Doc. 101).  Plaintiffs made no argument that Bethel should be included as a party subject to arbitration.  Once a significant portion of this litigation was sent to arbitration, Plaintiffs again proceeded to litigate their remaining claims against Bethel in the instant lawsuit. (Doc. 107). That litigation included defending a *second* motion to dismiss filed by Bethel.  (Doc. 121).  Then after all briefing on the pending motion to dismiss was completed and a hearing had been scheduled, Plaintiffs filed the instant motion to compel arbitration. (Doc. 134).

The procedural history of this action convinces this Court that Plaintiffs have substantially invoked the litigation process to a point that is inconsistent with their alleged arbitration right and waived any potential arbitration against Bethel.  Plaintiffs' only response to Bethel's waiver position is that they could not have included Bethel in the joint notice of claims because Bethel had not agreed to arbitrate, but this falls short of convincing the Court in this instance.  It was Plaintiffs who initiated litigation and actively opposed arbitration and even if Bethel had not "agreed" to arbitrate, Plaintiffs could have certainly sought to compel arbitration prior to now. For whatever reason, they chose not to. Moreover, Plaintiffs contend that they were unaware of the documents necessary to file a motion to compel arbitration until February 9, 2023.  However, February 9, 2023, was still four months prior to Plaintiffs filing their motion to compel in this action *and* before Plaintiffs filed the operative complaint against Bethel in this action *and* before Plaintiffs opposed another round of dismissal motions.  As such, the docket reflects that Plaintiffs have repeatedly attempted to draft their claims in a manner that avoids dismissal and forced

litigation on Bethel, only to, at the final hour, rescind its previous strategy and seek arbitration in the face of dismissal.   Viewing a totality of the circumstances, this Court is satisfied that Plaintiffs intentionally waived their right to arbitrate.

### B.    Existence of Contract with an Arbitration Clause

Regardless of waiver, Plaintiffs' motion to compel arbitration would still be subject to denial.  Bethel is the only Defendant not participating in arbitration in this action.[3]  Plaintiffs' position is that Bethel is contractually obligated to arbitrate based on contracts between Bethel and DRHB and Bethel and DRHI because Plaintiffs are "third parties who have an existing dispute involving claims related to the construction of their homes". (Doc. 134). In that regard, Plaintiffs assert that the question of which parties are subject to arbitrate is one of substantive arbitrability and should be decided by the arbitrator, not the Court.   (*Id.*).   For support, Plaintiffs rely on *Wiggins v. Warren Averett, LLC*, 307 So.3d.519    (Ala. 2020).  (*See* Docs. 134 and 135). Further, in anticipation of Bethel's argument that no contract exists between it and Plaintiffs, Plaintiffs argue that privity of contract is not required because Alabama permits recovery in "negligence for a defendant's breach of duty where the defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.".  (Doc. 135 citing to *Federal Mogul Corp. v. Universal Const. Co.*, 376 So.2d 716, 724 (Ala. Civ. App. 1979).

In response, Bethel argues (1) it is for the Court decide whether an arbitration agreement exists and (2) that no arbitration agreement exists which could serve the basis for Plaintiff's motion to compel. (Doc. 139 at 15).  With respect to arbitrability, Bethel relies on this Court's

---

[3] See FN 1.

previous analysis in *Holiday Isle Owners Assoc. v. Certain Underwriters at Lloyd's London*, 2022 WL 2161511, (S.D. Ala. June 15, 2022).  As to the existence of a contract, while acknowledging that agreements between Bethel and the other defendants exist, Bethel points out that there are no pending disputes between those Defendants and Bethel and, regardless, some Plaintiffs did not purchase their home from DRHI or DRHB, further removing the possibility of any contractual link between Plaintiffs and Bethel.  (*Id*.)  Finally, Bethel argues that Plaintiffs have failed to present any authority supporting that equitable principles force Bethel to arbitrate.  (*Id*.)

### 1.  Arbitrability

The parties disagree as to whether arbitrability is an issue for the court or the arbitrator.

> A motion to compel arbitration is analogous to a motion for a summary judgment. *TranSouth Fin. Corp. v. Bell*, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. *Id*. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *Jim Burke Automotive, Inc. v. Beavers*, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).' "

*Federal Ins. Co. v. Reedstrom*, 197 So.3d 971, 974 (Ala. 2015) (quoting *Elizabeth Homes, L.L.C. v. Gantt*, 882 So.2d 313, 315 (Ala. 2003) and *Fleetwood Enters., Inc. v. Bruno*, 784 So.2d 277, 280 (Ala. 2000)).  An order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate." *Holiday Isle*, 2022 WL 2161511 at *4 (quoting *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.,* 272 F. App'x 782, 785 (11th Cir. 2008) (per curiam)).

Neither case relied on by the parties is exactly on point.  In *Holiday Isle*, the undersigned addressed whether the existence of an arbitration clause should be determined by the court or the arbitrator, when there was no dispute that a contract existed between the parties.  *Holiday Isle*, 2022 WL 2161511 at *4-*9.   In *Wiggins*, the court discussed arbitrability, i.e., the scope of an arbitration provision, when there was no dispute that the non-signatories were third party beneficiaries to the contract at issue.  *Wiggins*, 307 So.3d. at 522-524. Notably, in each case, the underlying contract was a basis of the suit itself.  Here, Plaintiffs are non-signatories to a contract between co-defendants who have no pending disputes with each other and Plaintiffs' claims against Bethel are for negligence, wantonness, and negligent hiring, training, and supervision; not breach of contract.  Plaintiffs are correct that "[…] that whether the scope of an arbitration provision applies to nonparties or nonsignatories to an arbitration provision is also a question of arbitrability."  *Wiggins*, 307 So.2d 522 (citing to *Anderton v. The Practice-Monroeville, P.C.*, 164 So. 3d 1094, 1101 (Ala. 2014) ("The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability ….").  Nevertheless, as noted in *Holiday Isle*, "[w]hile federal policy favors arbitration, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. When considering a motion to compel arbitration, "the district court must determine whether the parties before the court agreed to arbitrate their dispute." *Holiday Isle*, 2022 WL at *4 (internal quotes and citations omitted). In this instance, it is for the Court to decide whether a contract with an arbitration clause exists.  *See* also *Federal Ins. Co., supra* ("The party seeking to compel arbitration has the burden of proving the *existence of a contract* calling for arbitration…")(emphasis added).   In this

case, Plaintiffs acknowledge no written agreement to arbitrate exists between Plaintiffs and Bethel and conclusively refer to Plaintiffs as third-party beneficiaries to the contracts between Bethel and the D.R. Horton Defendants.  But it is for the Court, not an arbitrator to decide if there is an equitable reason to permit Plaintiffs to compel arbitration of their claims against Bethel, based on contracts between Bethel and the D.R. Horton Defendants. Plaintiffs contend the arbitration provision of the co-defendants' contract should be enforced based on three equitable principles:  third party beneficiary, equitable estoppel, and intertwining claims.  (Doc. 141).   The Court will address each principle in turn.

### 2.  Third Party Beneficiary

Plaintiffs argue that they are "obviously" third party beneficiaries to the contracts between Bethel and the D.R. Horton Defendants.  (Doc. 141).  Plaintiff's unsupported position is not compelling.

> 'A nonsignatory can be bound to an arbitration agreement if "the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to incidental benefit upon the third party." *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003). *See also Edwards v. Costner*, 979 So. 2d 757, 763 (Ala. 2007). "[I]n order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties." *Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1251 (Ala. 2005)....

*Olshan Found. Repair Co. of Mobile, LP v. Schultz*, 64 So. 3d 598, 606-07 (Ala. 2010).

In the instant action, there is no dispute that at the time the contacts between Bethel and the D.R. Horton Defendants were executed, Plaintiffs were unknown.   As such, Plaintiffs' argument that they were intended third party beneficiaries' rests upon the fact that the D.R. Horton Defendants would eventually sell the homes being constructed on the open market and *someone* would eventually buy those homes and, therefore, the eventual-but-unknown

homeowner is a third-party beneficiary.  Although not supported in Plaintiffs' initial motion, the Court has considered the Plaintiffs' Second Supplemental Reply (Doc. 163) citing to *Beverly v. Macy*, 702 F.2d 931 (11th Cir. 1983)[4] for legal support that Plaintiffs did not need to be identified at the time the contracts were executed between Bethel and the D.R. Horton Defendants.[5] However, *Beverly* does not compel the result Plaintiffs seek in this instance. Instead, in *Beverly*, the court assessed the intent of the parties and determined that Plaintiff was the *intended beneficiary* of the contract at issue.  *Id*. at 941. Here, Plaintiffs have pointed to no evidence that Defendants drafted their contracts with each other with the benefit of Plaintiffs in mind. Although it could be said that eventually a homeowner may benefit from the work performed by Bethel, there is no compelling evidence that the contracts were entered into for the intended benefit of Plaintiffs.[6]  Instead, the factual scenario on which Plaintiffs rely, describes an incidental benefit bestowed.[7]  Accordingly, Plaintiffs cannot rely on third party beneficiary status to show the existence of a contract.

---

[4] In *Beverly*, an insured brought an action against the National Flood Insurers Association seeking compensation for the loss of her house due to flooding under a lapsed flood policy.  The district court granted summary judgment in favor of the Association, but the Court of Appeals held that plaintiff was a third-party beneficiary of a service agreement.

[5] Plaintiffs also point to Ala. Code § 7-2-318 for legal support.  (Doc. 163 at 2-3).  However, that section, entitled Third-party beneficiaries of warranties express or implied.  But Bethel is not a "seller" and according to the exhibits to Plaintiff's motion, the warranties at issue were provided to Plaintiffs by the D.R. Horton Defendant, not Bethel. (*See* Doc. 134-1).

[6] Although not discussed in further detail above, there can be no dispute that the work performed by Bethel was also intended to benefit the D.R. Horton defendants by way of making the homes more marketable to the general public. Moreover, in *Beverly*, the court clearly limited its findings to an existing policyholder "[b]ecause the obligation arose from express language in the service agreement and manuals incorporated therein, and because the obligation referred to a specific class of individuals clearly contemplated by the contract and identifiable at the time the obligation arose" and not "the general public". *Id*. at 942.

[7] Of note, *Beverly* did not discuss the enforceability of an arbitration clause by a non-signatory and applied general contract principles.

### 3. Equitable Estoppel

Plaintiffs next assert that the principle of equitable estoppel should prevent Bethel from avoiding arbitration.  Plaintiffs assert, without providing legal analysis, that Bethel's cited legal authority supports Plaintiffs' position.  Regardless, the Court does not find estoppel applicable to the present litigation.

> Regardless of whether a nonsignatory is *in fact* a third-party beneficiary, the nonsignatory is treated as a third-party beneficiary -- and is equitably estopped from avoiding arbitration -- when he or she asserts legal claims to enforce rights or obtain benefits *that depend on the existence of the contract that contains the arbitration agreement*. *See, e.g., Capitol Chevrolet & Imports, Inc. v. Grantham*, 784 So. 2d 285, 289 (Ala. 2000) ("[T]o maintain her claims, [the nonsignatory plaintiff] must be treated as a third-party beneficiary.... [A] third-party beneficiary is afforded all the rights and benefits, and has imposed upon him or her the burdens, of a contract, including those benefits and burdens associated with arbitration. *Ex parte Stamey*, 776 So. 2d 85 (Ala. 2000). Therefore, [the nonsignatory] cannot base her claims on the contract executed between her husband and Capitol Chevrolet, and at the same time seek to avoid the arbitration agreement....")....

*Schultz*, 64 So. 3d at 606-07. (emphasis in original)

In the present litigation, the traditional estoppel scenario does not exist.  Specifically, Plaintiffs, the non-signatories, are not seeking to avoid arbitration, they are looking to compel it.  Moreover, Plaintiffs' claims are not reliant upon the relevant contracts.  Further, reversing the legal scenario as Plaintiffs' argument requires, does not promote the outcome Plaintiffs seek because Bethel (the signatory) has not asserted a breach of contract claim against Plaintiff *i.e.*, asserted rights based on a contract while simultaneously seeking to avoid arbitration.  Rather, at best, it appears that Plaintiffs are asserting that Bethel should be estopped from avoiding arbitration with Plaintiffs because Bethel's defense to Plaintiffs' claims reference the contracts between Bethel and the D.R. Horton Defendants with whom no dispute exists.  But Plaintiffs have

cited to no authority that such an inverted logic is legally sound. If such a theory can be validated,

Plaintiffs have not persuaded the Court of such an outcome in the present action.

### 4.  Intertwining Claims

The final equitable exception on which Plaintiffs rely is the intertwining claims theory.

Again, Plaintiffs do not cite to any authority supporting their position on this ground.

Nevertheless, the Court is not persuaded, based on its own review of the relevant case law, that

Plaintiffs' position should prevail.

> " '... Under this doctrine, a nonsignatory to an arbitration agreement may compel
> a signatory to arbitrate claims "where arbitrable and nonarbitrable claims are so
> closely related that the party to a controversy subject to arbitration is equitably
> estopped to deny the arbitrability of the related claim." *Conseco Fin. Corp. v.
> Sharman*, 828 So. 2d 890, 893 (Ala. 2001) (citing *Cook's Pest Control, Inc. v. Boykin*,
> 807 So. 2d 524 (Ala. 2001)); *see also Ex parte Tony's Towing, Inc.*, 825 So. 2d 96,
> 97 (Ala. 2002) (explaining the reasons for limiting the doctrine of intertwining
> claims to use by the nonsignatory in compelling arbitration of a signatory's claims).
> The doctrine of intertwining claims "is not applicable, however, when a signatory
> attempts to compel a nonsignatory third party to arbitrate claims it may have
> against a signatory." *Edwards v. Costner*, 979 So. 2d at 764 (citing *Ex parte Tony's
> Towing*, supra) (emphasis added).' "

*Schultz*, 64 So. 3d at 606-07.  "However, we have held that the doctrine of intertwining

does not apply when *there is no ongoing arbitration between the parties to the arbitration*

*agreement.  See Southern Energy Homes, Inc. v. Kennedy*, 774 So.2d 540, 545 (Ala. 2000),

observing that '"intertwining" requires at least two threads to weave together—one

cannot intertwine a single thread.'" *Fountain v. Ingram*, 926 So.2d 333, 335-36 (Ala. 2005)

(quoting *Conseco*, 828 So.2d at 893–94). (emphasis added).

Although this equitable exception at least addresses the ability of a non-signatory (as

Plaintiffs are) to compel arbitration, the factual predicate typically underlying the intertwining

theory's application is again lacking from the present action. Rather, the only parties to the

contracts relied on by Plaintiffs are Bethel and the D.R. Horton Defendants who are not involved in ongoing arbitration.  As such, Plaintiffs' reliance on this equitable theory is misplaced.  *See Fountain*, 926 So.2d at 336.

Plaintiffs' attempts to apply the reasoning of the exception, also fails to appreciate that the reasoning does not support the outcome they seek.  Instead, in this situation, Bethel, like the non-party in *Tony's Towing*[8], simply cannot be compelled to arbitrate claims asserted by Plaintiff based – not upon a contract Plaintiff had with Bethel or D.R. Horton - but a contract between Bethel and D.R. Horton.  The fact that Bethel's contract with DRHI or DRHB may have included an arbitration clause for disputes between them, does not bind Bethel to arbitrate claims non-parties to the contracts bring against it.

Moreover, Plaintiffs have not presented any evidence that Bethel assented to arbitration with Plaintiffs at all or that the arbitration provisions in the contracts between Bethel and DR Horton Defendants is so broad as to encompass the claims made by Plaintiffs that assent could be gleaned by Bethel.  *See Ex Parte Stamey*, 776 So.2d 85, *89 (Ala. 2000) ("All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be "intimately founded in and intertwined with" the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the

---

[8] In *Ex Parte Tony's Towing*, a buyer of a mobile home sued the manufacturer, seller, towing company (Tony's Towing), and other defendants.  Buyers sought to compel the defendants to arbitrate based on the sales agreement between buyers and seller of the mobile home.  The Circuit Court granted the motion to compel and Tony's Towing appealed.  Plaintiff and the co-defendant argued arbitration was proper as to plaintiffs' claims against Tony's Towing relying on the doctrine of intertwining claims.  The Supreme Court of Alabama disagreed, finding "here, Tony's, as a non-signatory, has never agreed to arbitrate anything and, therefore is not estopped from avoiding arbitration."  825 So.2d at 98.

parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it.") (citation omitted).  Instead, the arbitration provisions in the contracts between Bethel and the D.R. Horton Defendants specifically limit arbitration to the signatories. (*See* Doc. 134-1) ("Section 13.1 Disputes. All disputes, whether existing now or arising in the future *between them*, related in any way to this Agreement, to Contractor's Work, or to any disputes that Owner or Contractor shall have with any third party related to the Work ("Disputes") shall be subject to Alternative Dispute Resolution.")(emphasis added); (*See also* Doc. 134-2 )(""10.1 Disputes. "… to the extent any dispute, claim or controversy *between Owner and Professional* arises out of or relates to …"; "10.3(a) Agreement to Arbitrate. *Owner and Professional shall resolve disputes* exclusively through binding arbitration…"; "10.3(c) Participation by Other Parties. *Owner and Professional* may have all necessary and appropriate parties included as parties to the arbitration…") (emphasis added).[9]  As such, the Court is not convinced this equitable exception applies in this action.

### C.    Privity of Contract

Plaintiffs alternatively argue that no privity of contract is required to compel arbitration because Alabama law permits recovery in "negligence for a defendant's breach of duty where the defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.".  (Doc. 135 citing to *Federal Mogul Corp.* 376 So.2d at 724.  The Court is not persuaded by Plaintiffs' position.  However, this

---

[9] The Court appreciates the arguments made by Plaintiffs at the hearing that the above emphasized language does not qualify the remaining portions of the sections.  However, the Court is not persuaded.  Instead, the plain language of the relevant sections of the contracts clearly limits the provisions to the contracting parties and to read otherwise would be to ignore the express limitations and render the language inconsistent and contradictory.

is the same argument Plaintiffs assert to avoid dismissal, so the Court will address Plaintiffs' more thoroughly herein below.

### III.     Motion to Dismiss

Bethel seeks dismissal of Plaintiffs' claims against it on three grounds: (1) Plaintiff's complaint fails to allege sufficient facts to support a claim of negligence or wantonness, (2) claims of seventy-three[10] parties are barred by the two-year statute of limitations, and (3) claims of twenty-seven Plaintiffs are barred based on the law of *caveat emptor*.  (Doc. 111, generally).  In response, Plaintiffs allege (1) they have plead sufficient facts to sustain a negligence/wantonness action against Bethel, (2) the statute of repose overrules the statute of limitations argument, and (3) *caveat emptor* does not apply.  (Doc. 121, generally).  The Court will address each argument in turn.

### A.     Legal Standard

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[10] The parties reference different numbers of Plaintiffs subject to dismissal.  Nevertheless, the correct number is irrelevant given the discussion below.

556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted). The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id*. at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "The Supreme Court's *Twombly* formulation of the pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2 (S.D. Ala. Oct. 15, 2009) (citations and internal quotations omitted). "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

### B.    Insufficient Factual Allegations

Bethel seeks dismissal of Plaintiffs' claims on the ground that the Amended Complaint fails to plead facts to support claims of negligence and wantonness. (Doc. 111). More specifically, Bethel contends that Plaintiffs' Complaint fails to allege facts to show how Bethel has a legal duty to Plaintiffs since they are not in privity with Bethel. *Id*.

To establish negligence under Alabama law, a plaintiff must prove: (1) a duty to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate causation, and (4) damage or injury. *Brushwitz v. Ezell*, 757 So. 2d 423, 432 (Ala. 2000)(citation omitted). "The existence of a legal duty is a question of law for the court; 'where there is no duty, there can be no negligence.' " *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) (citations omitted). The general rule in Alabama law is that when "the charge of negligence is based upon breach of duty arising out a contractual relationship, no cause of action arises in favor of one not in privity to the contract." *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 917 (Ala. 2017)(citations omitted).

There is no dispute that Plaintiffs are not in privity of contract with Bethel.  As such, to survive dismissal, Plaintiff's must plead facts to establish a duty exists by some alternative avenue.  To do that, Plaintiffs assert that Alabama law permits a claim for negligence to survive against a party not in privity relying on *Federal Mogul Corp. v. Universal Constru. Co.*, 376 So.2d 716 (Ala. Civ. App. 1979).  In *Federal Mogul*, the Appellate Court reversed a trial court's directed verdict in favor of defendant when no privity existed.  *See Id*.  In so doing, the Court stated:

> …[W]here the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract. However, there are exceptions, such as where there is an invasion of a duty independent or concurrent with the contract. *Weston v. National Mfrs. & Stores Corp.*, 253 Ala. 503, 45 So.2d 459 (1950).
>
> Stated alternatively, defendant's duty may arise from a social relationship as well as from a contractual relationship. *Williams v. Jackson Co.*, Ala.Civ.App., 359 So.2d 798, Cert. denied, 359 So.2d 801 (Ala.1978).
>
> Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty *where defendant negligently performs his contract with knowledge that others are relying on proper*

> *performance and the resulting harm is reasonably foreseeable. Williams v. Jackson Co.*, supra. *See also, Zeigler v. Blount Bros. Construction Co.*, Ala., 364 So.2d 1163 (1978).

*Federal Mogul*, 376 So.2d at 724 (emphasis added).  Plaintiffs further contend that the law as set forth in *Federal Mogul* was elaborated on by the court in *Berkel and Co. Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496 (Ala. 1994) which set forth six factors for the courts to consider in deciding to impose a duty in a construction context.  *Berkel*, 454 So.2d at 503.  Specifically, the *Berkel* factors are: (1) [T]he extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.  *Id*.  As a result, Plaintiffs rely on *Berkel* to impose a duty on Bethel, but at the very least, argue that the *Berkel* factors are more appropriately considered at summary judgment, further supporting that dismissal should not be granted.  (Doc. 121).

In reply, Bethel acknowledges that Alabama Law permits negligence/wantonness actions against parties not in privity in certain circumstances but maintains that Plaintiffs have not plead sufficient facts to establish one of the exceptions to the privity rule applies in this action.  For support, Bethel cites to several cases considering whether a duty exists when there is no privity between the parties and argues those cases support a dismissal of Plaintiffs' claims.  (Doc. 125, citing to *RaCON, Inc. v. Tuscaloosa County*, 953 So.2d 321 (Ala. 2006); *Keck v. Dryvit Systems, Inc.*, 830 So.2d 1 (Ala. 2002); *Parker Venture, LLC, v. Chancey Design Partnership, Inc.*, 2021 WL 920190 (M.D. Ala. 2021).  This Court has reviewed the cases relied on by Bethel and agrees with Bethel's position.

There is no dispute that there are exceptions to the general rule that "where the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract." *See Federal Mogul*, 376 So.2d at 724; *See also Cincinnati Ins. Companies v. Barber Insulation, Inc.*, 946 So. 2d 441, 447–48 (Ala. 2006) ("An exception to that general rule applies, however, 'when the defendant negligently performed its contract with knowledge that others were relying on its proper performance.'"). *Id.* Accordingly, "to find a plausible allegation of negligence under Alabama law in this case, there must be facts alleged to support that [Bethel] had reason to anticipate that [Plainitffs] would purchase the project and that it was foreseeable that [Plaintiffs] would rely on [Bethel's] performance." *Parker Venture*, at *4. Plaintiffs have not alleged such facts. Instead, the Amended Complaint fails to allege any facts indicating that at the time that Bethel performed the work, Plaintiffs were known to Bethel (or even the D.R. Horton Defendants). In fact, in this action, there are not even any facts suggesting Bethel was aware that the houses would even be sold.[11] Rather, the facts establish that at the time that Bethel performed the alleged work, Plaintiffs were not the owners of the homes and were not known to Bethel. As a result, there are no facts to support that it was foreseeable to Bethel that Plaintiffs would rely on its work and, therefore, no facts to establish Bethel owed Plaintiffs a duty. *See id*. Accordingly, Bethel is due to be dismissed.[12]

---

[11] To be clear, the Court is not insinuating that eventual sale was not a likely future occurrence. However, at this stage, Plaintiff's must allege facts and the Court is simply noting that they do not even allege that the house would be sold, much less to Plaintiffs.

[12] Given the above conclusion, it is unnecessary for the Court to address the additional arguments set forth by Bethel in support of partial dismissal.

**CONCLUSION**

For the reasons stated herein above, Plaintiff's Motion to Compel Arbitration as Bethel

Engineering (Doc. 134) is **DENIED** and Bethel's Motion to Dismiss (Doc. 111) is **GRANTED**.

      **DONE and ORDERED** this 27th day of September, 2023.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE
